Tommy **TREVINO**, Appellant,

v.

The **STATE** of Texas, State.

No. 2–99–554–CR.

Court of Appeals of Texas,
Fort Worth.

July 12, 2001.

Rehearing Overruled Nov. 1, 2001.

Lane & Lane; Bill Lane, Scott Brown, Fort Worth, for appellant.

Tim Curry, Tarrant Co. Crim. District Attorney; Charles M. Mallin, Chief of Appellate Section, Michael R. Casillas, James Cook, Lisa Haines, Ass't District Attorneys, Fort Worth, for appellee.

Panel A: CAYCE, C.J.; DAY and DAUPHINOT, JJ.

## OPINION

DAUPHINOT, Justice.

### INTRODUCTION

A jury convicted Appellant Tommy Trevino of the offense of murder and assessed

his punishment at sixty years' confinement. In a single point on appeal, Appellant contends that the trial court erred in denying his request at the punishment phase of the trial for a jury instruction on sudden passion. We reverse and remand for a new punishment hearing.

## FACTUAL BACKGROUND

On December 1, 1997, Appellant shot his wife, Michelle Trevino, three times with a .9 millimeter handgun. The lead detective on the case, Thomas Boetcher, testified that he interviewed Appellant on the day of the shooting. Appellant told Boetcher that he was in the living room of his home when Michelle confronted him about some telephone numbers that she had found in his wallet, and which she believed belonged to other women. Michelle was angry and at some point retrieved her .38 caliber revolver, returned to the living room, pointed the gun at Appellant, and pulled the trigger twice. Appellant was scared, but because the gun failed to fire, he assumed that it was not loaded. Appellant then went into the bathroom to dispose of the telephone numbers by flushing them down the toilet. Appellant told Boetcher that he did not recall at what point he retrieved his .9 millimeter handgun or where he retrieved it from. Additionally, Appellant did not know when or where Michelle loaded her revolver, as he lost sight of her when he went into the bathroom. Nevertheless, Appellant told Boetcher that Michelle shot at him again with the .38 while he was inside the bathroom. A struggle ensued, during which Appellant shot Michelle in the hip. Michelle continued to struggle, and Appellant shot her again in the left side of her head. The final shot entered Michelle's chest. She was pronounced dead at the scene.

Boetcher testified that he found a .9 millimeter gun in the living room and a .38 caliber revolver in the hallway, approximately 69 inches from where the victim lay. Boetcher found three spent .9 millimeter shell casings in the hallway and in the bathroom. Additionally, Boetcher recovered a .38 caliber bullet, which had entered a wall in the hallway approximately seven feet from the ground, and passed through into the closet of an adjoining bedroom. Boetcher also located approximately five live rounds of .38 caliber ammunition, matching the ammunition found in the .38 caliber gun in the hallway, on a shelf in the master bedroom. Additional .38 caliber ammunition was found in a box in the closet. Boetcher testified that the .38 revolver was loaded when he found it, with four live rounds and one fired casing.

Boetcher testified that the physical evidence recovered at the scene did not lend credence to Appellant's version of the events leading up to Michelle's death. Michelle did not sustain any defensive or offensive injuries to her wrists, hands, or forearms, and her fingernails were intact. Additionally, no projectiles from the .38 revolver were recovered in the bathroom, and no bullet holes were found in the walls, ceiling, or floor of the bathroom, although Appellant claimed that Michelle fired at him while he was inside the bathroom.

Dr. Marc Krouse, a medical examiner with the Tarrant County Medical Examiner's Office, testified that he performed the autopsy on Michelle's body. According to Krouse, the possible effects of the first gunshot wound sustained by Michelle could range from "virtual immediate unconsciousness to almost no effect at all." Krouse acknowledged that Michelle could continue to struggle even after having sustained the injury to her hip. The wound through Michelle's head, however, Krouse testified, would have been fatal, producing death within a matter of seconds. Thus,

Krouse concluded that Michelle would have been "basically dead" at the time of the third shot to her chest. Krouse testified that a short amount of time transpired between shots, from "[s]econds to maybe a minute or two."

Paula Trevino, Appellant's sister, testified that Appellant called her sometime around 12:00 p.m. on December 1, 1997, and told her to come over to his house because something "bad" had happened. Paula described Appellant as "frantic" during the telephone call. Although she recanted her testimony at trial, Paula acknowledged that she told the grand jury that she arrived at Appellant's house at approximately 12:20 p.m., although she did not call 911 until approximately 12:53 p.m. Paula stated that Appellant opened the door, and when she asked him what had happened, he told her, "I shot Michelle." In a written statement, Paula told police that Appellant told her that he and Michelle had a big fight about the telephone numbers and Michelle took out a gun and shot at him and he "took it away from her and shot her." Paula testified that she saw Appellant kneeling beside Michelle's body in the hallway and that he appeared to be "extremely upset."

Theodore Trevino, Appellant's brother, testified that he had a conversation with Michelle in 1994, during which she told him that she was angry with Appellant because he had gone out the night before and returned home with hickeys on his neck. According to Theodore, Michelle told him that she pointed a gun at Appellant while he was sleeping, and that "the only thing that kept her from pulling the trigger was the fact that [Appellant] had

her daughter in his arms" as he slept. Theodore told Appellant about his conversation with Michelle shortly thereafter and warned him to hide his gun so that Michelle would not find it. Theodore testified that Michelle told him that Appellant had hit her in the past, and that he had also observed Michelle striking Appellant.

At the guilt phase of the trial, the trial court instructed the jury on the law pertaining to accidental shooting and self-defense. The jury, however, found Appellant guilty of murder. Appellant does not appeal his conviction, but argues that the trial court erred in denying his requested punishment charge instructing the jury to consider whether he caused Michelle's death while under the immediate influence of sudden passion arising from an adequate cause.[1]

## SUDDEN PASSION

Section 19.02(d) of the Texas Penal Code provides that at the punishment stage of a murder trial, "the defendant may raise the issue as to whether he caused the death under the immediate influence of sudden passion arising from an adequate cause."[2] Sudden passion is a mitigating circumstance, which, if proved by a preponderance of the evidence, reduces the offense of murder to a felony of the second degree.[3] "Sudden passion" is "passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed which passion arises at the time of the offense and is not solely the result of former provocation."[4] "Adequate cause" is a "cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, suffi-

---

1. *See* TEX. PENAL CODE ANN. § 19.02(d) (Vernon 1994).

2. *Id.*

3. *Id.; Williams v. State*, 35 S.W.3d 783, 787 (Tex.App.—Beaumont 2001, pet. filed).

4. TEX. PENAL CODE ANN. § 19.02(a)(2).

cient to render the mind incapable of cool reflection."[5] Because the definitions of sudden passion and adequate cause are identical to those set forth in the former voluntary manslaughter statute, cases decided under the prior law shed light on what evidence has been held sufficient to raise the issue now encompassed by section 19.02(d).[6] We, therefore, rely on those cases for guidance.[7]

■ An accused is entitled to an instruction on every defensive issue raised by the evidence whether that evidence is strong, weak, contradicted, unimpeached, or unbelievable.[8] We must, therefore, consider all of the evidence raised at trial, regardless of the strength of the evidence or whether it is controverted.[9] Consequently, if the record reveals any evidence that Appellant acted under the immediate influence of sudden passion arising from an adequate cause, the trial court should instruct the jury on this mitigating issue.[10] The evidence may not, however, be so weak, contested, or incredible that it could not support such a finding by a rational

jury.[11] We review evidence offered in support of a defensive issue in the light most favorable to the defense.[12] The trial court must submit an instruction on sudden passion if there is some evidence of: (1) a legally adequate cause that would produce anger, rage, resentment, or terror sufficient to render an ordinary person incapable of cool reflection; and (2) the accused's excited and agitated state of mind arising out of provocation by the victim or someone acting with the victim at the time of the killing.[13]

■ On cross-examination by the defense, Boetcher admitted that he would be in fear if a .38 caliber weapon was fired at him. An accused, though otherwise clearly entitled to a charge on self-defense, does not raise the issue of sudden passion by presenting evidence that at the moment of acting in self-defense the accused feared his victim.[14] Accordingly, an instruction on self-defense does not "automatically obligate" the trial court to instruct the jury on sudden passion.[15] As one court observed, "An actor who fears for his life

**5.** *Id.* § 19.02(a)(1).

**6.** *Compare* TEX.PENAL CODE ANN. § 19.02(a) *with* Act of May 24, 1973, 63rd Leg., R.S., ch. 399, § 1, 1973 Tex.Gen.Laws 883, 913, *repealed by* Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 1.01, 1993 Tex.Gen.Laws 3586, 3614; See also *Saldivar v. State,* 980 S.W.2d 475, 505 (Tex.App.—Houston [14th Dist.] 1998, pet. ref'd).

**7.** *Saldivar,* 980 S.W.2d at 505; *Perez v. State,* 940 S.W.2d 820, 822 (Tex.App.—Waco 1997, no pet.).

**8.** *Muniz v. State,* 851 S.W.2d 238, 254 (Tex. Crim.App.1993); *Williams,* 35 S.W.3d at 787; *Benavides v. State,* 992 S.W.2d 511, 526 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd); *Saldivar,* 980 S.W.2d at 505; *Davila v. State,* 952 S.W.2d 872, 876 (Tex.App.—Corpus Christi 1997, pet. ref'd); *Brazelton v. State,*

947 S.W.2d 644, 646 (Tex.App.—Fort Worth 1997, no pet.).

**9.** *Reese v. State,* 877 S.W.2d 328, 333 (Tex. Crim.App.1994).

**10.** *Perez,* 940 S.W.2d at 822.

**11.** *Benavides,* 992 S.W.2d at 526 (citing *Gold v. State,* 736 S.W.2d 685, 688 (Tex.Crim.App. 1987)).

**12.** *Brazelton,* 947 S.W.2d at 646.

**13.** *Benavides,* 992 S.W.2d at 526; *Perez,* 940 S.W.2d at 822; *Merchant v. State,* 810 S.W.2d 305, 310 (Tex.App.—Dallas 1991, pet. ref'd).

**14.** *Daniels v. State,* 645 S.W.2d 459, 460 (Tex. Crim.App.1983); *Merchant,* 810 S.W.2d at 310.

**15.** *Fry v. State,* 915 S.W.2d 554, 559 (Tex. App.—Houston [14th Dist.] 1995, no pet.).

may coolly and deliberately dispatch his assailant without panic or hysteria."[16] Rather, the evidence must show that Appellant's mental state "rose beyond a bare claim of fear or was so strong and overpowering that it rendered him incapable of rational thought and collected action."[17] In other words, the evidence adduced at trial must demonstrate that Appellant was in the throes of actual, subjective passion.[18]

■ That sudden passion is a subjective concept does not, however, necessitate that there be direct evidence of the defendant's state of mind. Indeed, such direct evidence is neither needed nor usually available.[19] Rather, because sudden passion is essentially a culpable mental state, it may be inferred from the acts of the accused and the circumstances under which those actions occur.[20] Accordingly, the circumstances which raise the issue of self-defense may also be viewed by a rational jury as showing that the defendant acted under sudden passion arising from an adequate cause when he caused the death.[21]

In *Ojeda v. State,* there was evidence that the deceased struck the defendant and his girlfriend with a belt before the defendant stabbed him nine times.[22] The

court of criminal appeals held that the trial court did not err in denying the defendant's request for a charge on the offense of voluntary manslaughter because there was no direct evidence as to the defendant's apparent frame of mind at the time of the incident.[23] "Whether he was cool and collected in defending himself, or enraged at being hit and seeing his girlfriend hit is not shown."[24] In overruling *Ojeda,* the *Moore* court held that evidence of acts of the defendant and the circumstances in which those acts occur may constitute evidence of sudden passion, and further, that evidence of adequate cause may also be some evidence of sudden passion. The court explained:

> This Court['s] statement that there was "no evidence as to appellant's apparent frame of mind" is not correct. Ojeda's stabbing someone nine times after being struck, and seeing his girlfriend struck, was an action from which a reasonable juror could have concluded that he was angry or resentful. There may be a person who is, as the *Ojeda* Court said above, "cool and collected in defending himself" by stabbing someone nine times in the neck and back after being struck

---

16. *Id.*

17. *Jones v. State,* 963 S.W.2d 177, 180 (Tex. App.—Fort Worth 1998, pet. ref'd); *Carrillo v. State,* 889 S.W.2d 501, 504 (Tex.App.—Houston [14th Dist.] 1994, no pet.).

18. *Jones,* 963 S.W.2d at 180; *Merchant,* 810 S.W.2d at 310.

19. *Moore v. State,* 969 S.W.2d 4, 10 (Tex. Crim.App.1998).

20. *Moore,* 969 S.W.2d at 11; *Johnson v. State,* 815 S.W.2d 707, 709 (Tex.Crim.App.1991); *see Hernandez v. State,* 819 S.W.2d 806, 810 (Tex.Crim.App.1991) ("[M]ental culpability is of such nature that it generally must be inferred from the circumstances under which a prohibited act or omission occurs."); *Norwood v. State,* 135 Tex.Crim. 406, 120 S.W.2d

806, 809 (1938) (A defendant's mental state "was concealed within his own mind and can only be determined from his words, acts, and conduct.").

21. *See Lewis v. State,* 89 Tex.Crim. 345, 231 S.W. 113, 116 (1921) (holding that where the question of self-defense is raised, "it is a rare instance where the issue of manslaughter does not also become pertinent."); *see also Gonzales v. State,* 717 S.W.2d 355, 362 (Tex. Crim.App.1986) (Clinton, J., dissenting); *Benavides,* 992 S.W.2d at 525.

22. 712 S.W.2d 742, 743–44 (Tex.Crim.App. 1986), *overruled by Moore,* 969 S.W.2d at 10.

23. *Id.* at 744.

24. *Id.*

and seeing his girlfriend struck, but to say that such evidence is not some proof that the person was other than cool and collected is contrary to common experience and reason. We do not say that a jury would be bound to find the fact of sudden passion in such a defendant's favor. But to say that there was no evidence of that mental state is simply incorrect.[25]

 In the case now before us, Appellant's version of the events leading up to his wife's death, if believed, could lead a rational jury to find Michelle's actions in pointing a gun at Appellant and firing three times in an apparent fit of jealous rage to be a legally adequate cause, which would commonly produce anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render an ordinary person's mind incapable of cool reflection.[26] Similarly, Appellant's shooting Michelle three times in response to Michelle's provocation in firing her own gun at Appellant was an action from which the jury could conclude that Appellant was acting under the immediate influence of sudden passion at the time of the killing.[27]

 We do not mean by our holding, as the State suggests, that "anytime a defendant raised self-defense based on allegedly having been shot at, the sudden passion instruction would have to be given," although it has been observed that "[w]hen the defendant raises issues of self-defense during the guilt/innocence phase of trial, the issue of sudden passion is typically also raised.... Accordingly, trial courts should give both instructions when requested."[28] The question before us is whether there was any evidence, in this case, from which a rational jury could infer sudden passion.[29] It is not for us to determine the weight to be given the evidence, rather, it is the jury's duty, pursuant to a proper instruction, to determine whether the evidence is credible and supports a finding in Appellant's favor on the mitigating issue.[30] We conclude that in the case now before us there was some evidence from which the jury could conclude that Appellant acted under the immediate influence of sudden passion arising from an adequate cause. Consequently, we hold that the trial court erred in denying Appellant's request for an instruction on that issue.

## HARM ANALYSIS

 Our determination that error occurred does not, however, end our inquiry. We must next evaluate whether sufficient harm resulted from the error to require reversal.[31] Error in the charge, if timely objected to in the trial court, requires reversal if the error is "calculated to injure the rights of the defendant," which means no more than that there must be *some* harm to the accused from the error.[32] In other words, a properly preserved error will call for reversal as long as the error is not harmless.[33]

---

25. *Moore,* 969 S.W.2d at 11.

26. *See* TEX.PENAL CODE ANN. § 19.02(a)(1).

27. *See id.* § 19.02(a)(2), (d).

28. *Chavez v. State,* 6 S.W.3d 66, 72–73 (Tex. App.—San Antonio 1999, pet. ref'd); *Benavides,* 992 S.W.2d at 524–25.

29. *Moore,* 969 S.W.2d at 11.

30. *Id.*

31. *Abdnor v. State,* 871 S.W.2d 726, 731–32 (Tex.Crim.App.1994).

32. TEX.CODE CRIM.PROC.ANN. art. 36.19 (Vernon 1981); *see Abdnor,* 871 S.W.2d at 731–32; *Almanza v. State,* 686 S.W.2d 157, 171 (Tex. Crim.App.1985) (op. on reh'g).

33. *Almanza,* 686 S.W.2d at 171.

In making this determination, the "actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole."[34] The burden lies with the defendant to persuade the reviewing court that he suffered some actual harm.[35]

Here, Appellant specifically requested a charge on sudden passion at the punishment phase of the trial as follows:

> [DEFENSE COUNSEL]: We are going to request a charge under ... section 19.02, the murder section, sub-section D. It's what we used [to call] voluntary manslaughter. I am sure the Court is aware under the immediate influence of sudden passion. We would like that charge included in the jury charge in punishment. And we would also ask the Court–we don't have a written version. But will you say we have perfected the record just as though we had a written submission since you know the charge.
>
> THE COURT: Yes, I know what charge you are requesting and your request is denied.

Accordingly, we hold that Appellant properly preserved error in the jury charge, and we examine the record to determine whether Appellant suffered some harm from the error.[36] The State argues that "the jury's rejection of Appellant's self-defense claim at guilt/innocence conclusively proves that Appellant suffered no actual harm by the trial court's refusal to submit the sudden passion instruction." This is so, according to the State, because "the jury had already deemed the factual basis [of a sudden passion issue] wholly unworthy of belief." We disagree.

It is impossible for us to speculate as to the basis upon which the jury rejected Appellant's self-defense claim. Additionally, the fact that a defendant receives a self-defense instruction at the guilt phase of the trial, which the jury rejects by convicting him of murder, does not automatically deprive him of the right to an instruction at the punishment phase on whether he acted under the influence of sudden passion arising from an adequate cause.[37] Likewise, that the defense's "theory" of the case was that Appellant killed Michelle in self-defense or that the shooting was accidental does not foreclose Appellant from arguing in mitigation of his punishment that he acted under the immediate influence of sudden passion. "[A]n issue of sudden passion ... 'need not be a 'theory' claimed by one party or another— it exists independently in the evidentiary facts of the matter.' "[38] Furthermore, we note that while defense counsel's argument to the jury at the punishment phase of the trial primarily concerned the appropriateness of probation for Appellant, as opposed to a long period of incarceration, we would not expect counsel to argue to the jury that Appellant acted "under the immediate influence of sudden passion arising from

34. *Id.*

35. *Abdnor*, 871 S.W.2d at 732; *LaPoint v. State*, 750 S.W.2d 180, 191 (Tex.Crim.App. 1988) (op. on reh'g).

36. *See Vasquez v. State*, 919 S.W.2d 433, 435 (Tex.Crim.App.1996).

37. *Perez*, 940 S.W.2d at 821 n. 1 (citing *Goff v. State*, 720 S.W.2d 94, 96 (Tex.Crim.App. 1986); *Medlock v. State*, 591 S.W.2d 485, 487 (Tex.Crim.App. [Panel Op.] 1979)).

38. *Jenkins v. State*, 740 S.W.2d 435, 444 (Tex. Crim.App.1987) (op. on reh'g) (Clinton, J., dissenting) (quoting *Daniel v. State*, 668 S.W.2d 390, 393 (Tex.Crim.App.1984)).

an adequate cause" when such a theory had not been submitted to the jury for its consideration.

 Having determined that there was some evidence to warrant submission to the jury of the mitigating circumstance of sudden passion, we cannot conclude that the trial court's refusal to submit such an instruction upon Appellant's proper request was harmless. As submitted, the charge required the jury to assess Appellant's punishment within the range provided by law for a first degree felony, that is, by confinement for life, or for any term of years not less than five or more than 99.[39] The jury sentenced Appellant to 60 years' confinement. If the requested issue on sudden passion had been submitted, and the jury had found the issue proved by a preponderance of the evidence, the offense would have been a felony of the second degree, punishable by a term of imprisonment of not more than twenty years.[40] We are, therefore, constrained to hold that Appellant has suffered some harm from the trial court's error in denying his request for a jury instruction on sudden passion.[41] Accordingly, we sustain Appellant's sole point on appeal.

## CONCLUSION

Having sustained Appellant's sole point, we reverse the judgment of the trial court as to punishment and remand this cause to the trial court to conduct a new punishment hearing in accordance with this opinion.

CAYCE, C.J. dissents without opinion.

**39.** *See* TEX. PENAL CODE ANN. § 12.32 (Vernon 1994).

**40.** *See id.* §§ 12.33, 19.02(d) (Vernon 1994).

**41.** *See Perez,* 940 S.W.2d at 823–24.