ACCEPTED
12-14-00158-CR
TWELFTH COURT OF APPEALS
TYLER, TEXAS
5/8/2015 6:51:57 PM
CATHY LUSK
CLERK

APPELLANT RESPECTFULLY REQUESTS ORAL ARGUMENT

_____

12-14-00158-CR

_____

FILED IN
12th COURT OF APPEALS
TYLER, TEXAS

5/8/2015 6:51:57 PM

CATHY S. LUSK
Clerk

IN THE
COURT OF APPEALS
FOR THE TWELFTH DISTRICT
TYLER, TEXAS

_____

RICKY NEAL, JR., Appellant

VS.

THE STATE OF TEXAS, Appellee

_____

On Appeal from the 7th District Court of Smith County, Texas
Trial Court Cause No. 007-0505-13
Before the Honorable Kerry L. Russell

_____

APPELLANT'S BRIEF

_____

Law Office of G. J. Smith, Sr.
ATTORNEY AT LAW
2000 E. Lamar Blvd., Suite 330
Arlington, Texas 76006
Tel 817-635-3100
Fax 817-635-3104
attorney@gjsmithlaw.com
Attorney for Appellant

## Identity of Parties and Counsel

**Parties to the Appeal:**

Ricky Neal, Jr., Appellant

The State of Texas

**Names and Addresses of Trial Counsel:**

Jeffrey Allen Wood and Brian Mitchell Jiral
Assistant District Attorney
Smith County District Attorney
100 N. Broadway Avenue
Tyler, Texas 75702
(903) 535-0520

Thad Watts Davidson
Davidson Law Office
329 South Fannin Avenue
Tyler, Texas 75702
(903) 595.9600

**Names and Addresses of Appellate Counsel:**

Michael West
Assistant District Attorney
Smith County District Attorney
100 N. Broadway Avenue, 4th Floor
Tyler, Texas 75702

Gerald J. Smith, Sr.
2000 E. Lamar Blvd., Suite 330
Arlington, Texas 76006

## Request for Oral Argument

In accordance with Rule 39.1 of the Texas Rules of Appellate Procedure, Appellant respectfully requests oral argument. Appellant submits that if granted, oral argument in this cause will further clarify the issues raised in this brief and aid this Honorable Court in assessing the merits of the arguments raised therein.

## Table of Contents

Identity of Parties and Counsel ................................................................................. ii

Request for Oral Argument .......................................................................................... ii

Table of Contents .......................................................................................................... ii

Index of Authorities ..................................................................................................... iv

Statement of the Case ................................................................................................... vii

Issues Presented ............................................................................................................. viii

References to the Record ............................................................................................... 1

Background ...................................................................................................................... 2

Statement of Facts .......................................................................................................... 3-4

Summary of Arguments ................................................................................................ 4

Argument .......................................................................................................................... 5

Issue One: The State failed to prove that Appellant did not fire upon and kill Mass in self-defense……………………………………………………………………...5

Issue Two: The trial court erred in limiting Appellant's ability to elicit testimony establishing the alleged victim, Moss', gang affiliation and how that evidence demonstrated Appellant's justified use of deadly force in this case……………....20

Issue Three: The trial court erred in limiting Appellant's ability to elicit testimony establishing the alleged victim, Moss', gang affiliation and how that evidence demonstrated Appellant's justified use of deadly force in this case……………..…..27

Issue Four: The trial court erred in limiting Appellant's cross-examination of State's witnesses to establish the alleged victim, Moss', gang affiliation and how that evidence demonstrated Appellant's justified use of deadly force in this case………..30

Issue Five: The trial court erred in denying Appellant's request for a necessity instruction. …………………………………………………………….....41

Issue Six: The trial court erred in its ruling that Appellant could not elicit testimony from defense witness, Wilmon Davis, that shortly prior to the shooting someone in the mall utter "he might get shot."…………………………………......46

Issue Seven: Trial counsel rendered ineffective assistance of counsel in failing to challenge whether the State's gang identification witness was qualified to render an expert opinion that Appellant was affiliated with a gang. ……………………….…58

Issue Eight: The trial court erred in denying Appellant's request lesser-included offense jury instructions. …………………..…………………………………...76

Issue Nine: The trial court erred in denying Appellant's request for inclusion in the punishment charge of a sudden passion instruction……..……………………...81


Prayer……………………………………………………………………..….88

Certificate of Compliance …………………………………………………..….88

## Index of Authorities

## Cases

*Abdnor v. State,* 871 S.W.2d 726, 731 (Tex.Crim.App.1994). ...................................75

*Airline v. State*, 721 S. W. 2d 348, 351 (Tex. Crim. App. 1986) ................................. 40

*Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985)...............................53

*Andrews v. State, 159 S.W.3d 98* (Tex.Crim.App.2005) .................................................. 61

*Anderson v. State*, 15 S.W. 3d 177, 184 (Tex. App.—Texarkana 2000) ................57

*Alonzo v. State*, 353 S.W. 3d 778, 781 (Tex. Crim. App. 2011) ......................77

*Barrios v. State*, 389 S.W.3d 382 (Tex. App.—Texarkana 2012) ................................ 34

*Benavides v. State,* 992 S.W.2d 511, 524–25 (Tex. App.–Houston [1st Dist.] 1999, pet. ref'd)............................................................................................................... 87

*Brooks v. State,* 990 S.W.2d 278, 287 (Tex. Crim. App. 1999) ..................................... 55

*Brooks v. State,* 323 S.W.3d 893, 912 (Tex.Crim.App.2010) .......................................... 6

*Bumgardner v. State*, 963 S.W.2d 171, 175 (Tex. App. 1998)........................................ 52

*Butler v. State*, 663 S.W.2d 492, 496 (Tex. App. 1983). ................................................52

*Carmen v. State*, 276 S.W.3d 538, 545 (Tex. App. 2008) ............................................. 44

*Chew v. State,* 804 S.W.2d 633, 635 (Tex.App.-San Antonio 1991).............................29

*Clayton v. State,* 235 S.W.3d 772, 778 (Tex.Crim.App.2007).........................................6

*Curry v. State,* 30 S.W.3d 394, 406 (Tex.Crim.App.2000) ...............................................6

*Davis v. State,* 278 S.W.3d 346, 352 (Tex.Crim.App.2009).........................................50

*Darkins v. State,* 430 S.W.3d 559, 565 (Tex.App.-Houston [14th Dist.] 2014). .......... 8

*DeLeon v. State*, 322 S.W.3d 375 (Tex. App. 2010.......................................................75

*Dempsey v. State,* 159 Tex. Crim. 602, 266 S.W.2d 875, 877–78 (Tex. Crim. App. 1954).................................................................................................................23

*Devine v. State,* 786 S.W.2d 268, 270 (Tex. Crim. App. 1989) ................................... 50

*Diaz v. State,* 380 S.W.3d 309, 311 (Tex.App.Fort Worth 2012, pet. ref'd) .............57

*Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 587 (1993).......................................60
Ferrel v.State, 55 S.W.3d 586, 591 (Tex.Crim.App.2001)................................................33*

*Fry v. State,* 915 S.W.2d 554, 560–61 (Tex.App.-Houston [14th Dist.] 1995, no pet.). ..............................................................................................................23

*Garcia v. State,* 57 S.W.3d 436, 440 (Tex. Crim. App. 2001).....................................61

*Gaspar,* 327 S.W.3d 349, 356 (Tex. App.—Texarkana 2010) ...............................43

*Gammill v. Jack Williams Chevrolet, Inc.*, 972 S.W.2d 713, 726 (Tex. 1998)...........63

*Green v State, 876 S.W.2d.226* (Tex.App.—Beaumont 1994, no pet.) .....................56

*Guilbeau v. State,* 193 S.W.3d 156 160 (Tex. App.—Houston (1st Dist.) 2006)......51

*Guzman v. State,* 188 S.W.3d 185, 188 (Tex.Crim.App.2006) ...........................77

*Grffen v. State*, 2014 WL 7474076 (Tex. App.—Houston (1st Dist.) 2014) ………...87

*E.I. du Pont de Nemours & Co. v. Robinson,* 923 S.W.2d 549, 556 (Tex. 1995)………61

*Forest v. State,* 989 S.W.2d 365, 367 (Tex. Crim. App. 1999)). …………………79

*Frye v. United States,* 293 F. 1013, 1014 (D.C. Cir. 1923)…………………………60

*Hamel v. State,* 916 S.W.2d 491, 493 (Tex. Crim. App. 1996) .................................49

*Hall v. State,* 225 S.W.3d 524, 535 (Tex. Crim. App. 2007) ………………………77

*Hartsfield v. State,* 305 S.W.3d 859, 863 (Tex.App.-Texarkana 2010) ........................6

*Hill v. State,* 99 S.W.3d 248, 251 (Tex. App.-Fort Worth 2003, pet. ref'd) ..............33

*Hooper v. State,* 214 S.W.3d 9, 13 (Tex.Crim.App.2007). .............................................7

*Jackson v. State*, 877 S.W.2d 768 (Tex. Crim. App. 1994).............................................74

*Jackson v. State, 482 S.W.2d 864, 868 (Tex.Crim.App  1972)*...........................................30

*Johnson v. State,* 650 S.W.2d 414, 416 (Tex. Crim. App. 1983) ................................50

*Johnson v. State*, 433 S.W.3d 546 (Tex. Crim. App. 2014)...........................................30

*Jones v. State,* 944 S.W.2d 642, 647 (Tex. Crim. App.1996) ........................................ 6

*Klein v. State,* 662 S.W.2d 166 (Tex.App.—Corpus Christi 1983, no pet.) .............. 43

*Koehler v. State,* 679 S.W.2d 6, 9 (Tex. Crim. App.1984) .............................................29

*Lavern v. State,* 48 S.W.3d 356, 360–61 (Tex. App.-Houston [14 Dist.] 2001). ........ 51

*Lopez v. State,* 343 S.W.3d 137, 143 (Tex. Crim. App. 2011). ..................................... 69

*Love v. State,* 199 S.W.3d 447, 455 (Tex.App.–Houston [1st Dist.] 2006, pet.   ref'd) ……………………………………………………………………………………….82

*Lewis v. State,* 529 S.W.2d 550, 553 (Tex.Crim.App.1975) ………………...……..81

*Matchett v. State,* 941 S.W.2d 922, 940 (Tex.Crim.App.1996). .................................... 28

*Matthews v. State,* 708 S.W.2d 835, 837–38 (Tex. Crim. App. 1986).........................36

*McDonald v. State,* 179 S.W.3d 571, 576 (Tex. Crim. App. 2005) ...............................20

*McKinney v. State,* No. 12–03–00155–CR, 2004 WL 1852975, 2004 Tex. App. LEXIS 7472 (Tex. App.-Tyler August 18, 2004) ………………………………….87

*Medina v. State,* 411 S.W.3d 15, 21(Tex. App.-Houston [14th Dist.]2013). ....................................................................................................................... 45

*Miranda v. State, 350* S.W.3d 141, 147 (Tex. App.-San Antonio 2011, no pet.)......................................................................................................................................7

*Morales v. State, 357* S.W.3d 1, 7 (Tex.Crim.App.2011)................................................. 9

*Merrell Dow Pharm., Inc. v. Havner,* 953 S.W.2d 706, 712 (Tex. 1997)……………64

*Mozon v. State,* 991 S.W.2d 841, 845 (Tex. Crim. App. 1999) ....................................23

*Ngo v. State,* 175 S.W.3d 738, 744 (Tex. Crim. App. 2005) ......................................... 31

vi

*Ortiz v. State,* 144 S.W.3d 225, 233–34 (Tex. App.–Houston [14th Dist.] 2004, pet. ref'd) …………………………………………………………………….78

*Pentycuff v. State,* 680 S.W.2d 527 (Tex.App.—Waco 1984, pet. ref'd). ................... 50

*Pitonyak v. State,* 253 S.W.3d 834, 846 (Tex. App.-Austin 2008, pet. ref'd) ……….80

*Rylander v. State,* 101 S.W.3d 107, 111 (Tex. Crim. App. 2003) ............................... 68

*Saxton v. State,* 804 S.W.2d 910, 914 (Tex. Crim App. 1991) ........................................ 6

*Semaire v. State,* 612 S.W.2d 528, 530 (Tex. Crim. App. 1980)...................................44

*Strickland v. Washington,* 466 U.S. 668, 686 (1984)…………………………..……..57

*Shaw v. State,* 243 S.W.3d 647, 657 (Tex.Crim.App.2007) ...........................................34

*Smith v. State,* 355 S.W.3d 138, 145 (Tex.App.-Houston [1st Dist.] 2011)...................7

*Smith v. State,* 874 S.W.2d 269, 273 (Tex.App.—Houston [14th Dist.] 1994)......................................................................................................................50

*Tate v. State,* 981 S.W.2d 189, 192–93 & n. 5 (Tex.Crim.App.1998). ....................... 24

*Thompson v State*, 9 S.W.3d 808, 814(Tex.Crim.App.1999). ....................................... 68

*Torres v. State,* 71 S.W.3d 758, 760 & n. 4 (Tex. Crim. App. 2002) ............................23

*Torres v. State,* 117 S.W.3d 891, 896–97 (Tex. Crim. App. 2003). ..............................25

*Trevino v. State,* 100 S.W.3d 232, 238 (Tex. Crim. App. 2003). …………………….84

*Vela v. State*, 209 S.W.3d 128, 133 (Tex. Crim. App. 2006) ....................................... 73

*Virts v. State,* 739 S.W.2d 25 (Tex. Crim. App. 1987). ................................................29

*Weatherred v. State,* 15 S.W.3d 540, 542 (Tex. Crim. App. 2000) ..............................54

*Wilson v. State,* 391 S.W.3d 131 (Tex.App.–Texarkana 2012,.... no pet.) ..............49

*Wiggins v. Smith,* 539 U.S. 510 (2003)………………………………..…………….69

*See Wooten v. State,* 400 S.W.3d 601, 608–09 (Tex. Crim. App. 2013)…………83

*Yantis v.  State, 49* Tex.  Crim.  400, 94 S.W.  1019,   1021

(Tex.Crim.App.1906).  ........................................................................................24

*Zuliani v. State,* 97 S.W.3d 589, 594 (Tex.Crim.App.2003) ........................................ 7

## **Rules**

TEX. R. APP. P. 9.4 ........................................................................................ 88

Tex. R.  Evid.  803(1)…………………………………………………………55

Tex. R.  Evid.  702  …………………………………………………………...…60

Tex R.  Evid.  705(c)…………………………………………………………….73

## **Codes**

Tex. Pen. Code Ann. § 9.22(1)……………………………………………………50

Tex. Code Crim. Proc. Ann. art. 36.19 …………………………………….…53

Tex. Pen. Code § 2.03(a)…………………………………………………………76

TEX. PEN. CODE § 9.02 …………………………………………………….  76

TEX. PEN. CODE § 2.03(d)…………………………………………………..76

TEX. PEN. CODE § 9.31 …………………………………...……………76

TEX. PEN. CODE ANN. § 22.05(a) ………………………………………..77

Tex. Code Crim. Proc. Ann. art. 37.09(3) …………………………………..80

Tex. Penal Code Ann. § 6.03(c) … ………………………………………81

## Secondary Sources

Barbara E. Bergman & Nancy Hollander, Wharton's Criminal Evidence § 6:22 (15th ed. 1998 & Supp. 2000).................................................................................... 49

Judge Harvey Brown *Eight Gates for Expert Witnesses*, 36 Hous. L. Rev. 743, 744 (1999) ........................................................................................................................ 64

David E. Colmenero, A Dose of Daubert to Alleviate "Junk Science" in Texas Courtrooms: Texas Adopts the Federal Standard for Determining the Admissibility of Scientific Expert Testimony, *27 Tex. Tech L. Rev. 293, 294 (1996)*…………….61

Jason G. Duncan, Note, *"A Pig's Breakfast": Judicial Gatekeeping for Scientific and Specialized Expert Testimony*, 6 Suffolk J. Trial & App. Advoc. 21, 30 (2001).............. 62

Edward J. Imwinkelried, *The Next Step After Daubert: Developing a Similarly Epistemological Approach to Ensuring the Reliability of Nonscientific Expert Testimony*, 15 Cardozo L. Rev. 2271, 2279 (1994) ............................................................................. 60

Placido G. Gomez, *It is Not So Simply Because an Expert Says It's So: The Reliability of Gang Expert Testimony Regarding Membership in Criminal Street Gangs: Pushing the Limits of Texas Rule of Evidence*, 702, 34 St. Mary's L.J. 581, 605 (2003)....................................64

Emily L. Baggett, Note, *The Standards Applied to the Admission of Soft Science Experts in State Courts*, 26 Am. J. Trial Advoc. 149, 156 (2002)    ……………………………..62

## Statement of the Case

Offense:                                                                (CR 1)

Appellant's plea to offense:                              (CR 19) and (RR 13/244)

Trial on Guilt/Innocence:                                               Yes

Finding on Guilt:  Yes                              (RR 18/11) (CR 385)

Trial on Punishment:                                                    Yes

Punishment:      Life (RR Supp. Vol. 1/38) (CR 401)

Judgment:      Judgment conforms to the verdict (RR Supp. Vol. 1/38) (CR 416)

## Issues Presented

### Issue One

The State failed to prove that Appellant fired upon and killed Mass in self-defense.

### Issue Two

The trial court erred in limiting Appellant's ability to elicit testimony establishing the alleged victim, Mass', gang affiliation and how that evidence demonstrated Appellant's justified use of deadly force in this case.

### Issue Three

The trial court erred in limiting Appellant's cross-examination of State's witnesses to establish the alleged victim, Mass', gang affiliation and how that evidence demonstrated Appellant's justified use of deadly force in this case.

### Issue Four

The trial court erred in granting the State's proposed jury instructions negating Appellant's claim of self-defense.

### Issue Five

The trial court erred in denying Appellant's request for a necessity instruction.

### Issue Six

The trial court erred in its ruling that Appellant could not elicit testimony from defense witness, Wilmon Davis, that shortly prior to the shooting someone in the mall utter "he might get shot."

### Issue Seven

Trial counsel rendered ineffective assistance of counsel in failing to challenge whether the State's gang identification witness was qualified to render an expert opinion that Appellant was affiliated with a gang.

### Issue Eight

The trial court erred in denying Appellant's request lesser-included offense jury instructions.

### Issue Nine

The trial court erred in denying Appellant's request for inclusion in the punishment charge of a sudden passion instruction.

12-14-00158-CR

IN THE COURT OF APPEALS
FOR THE TWELFTH DISTRICTTYLER, TEXAS

RICKY NEAL, JR., Appellant VS.

THE STATE OF TEXAS, Appellee

_____

TO THE HONORABLE COURT OF APPEALS:

Appellant, RICKY NEAL, JR., respectfully submits this brief in the above styled and numbered cause. This is an appeal of a conviction for the offense of Murder in the 7th District Court of Smith County, Texas, before the Honorable Kerry Russell.

## References to the Record

References to the Clerk's Record are designated as "(CR page number)" References to the Reporter's Record are designated as "(RR volume number (1-24) / page number)"

## Background

In the Indictment, the State alleged that on or about the 9th day of February 2013, in Smith County, Texas, Appellant did intentionally or knowingly cause the death of an individual named Christopher Mass, by shooting Christopher Mass with a firearm (CR 1). *See* Article 19.02(b) (1), TEX. PEN. CODE. The Indictment further alleged that Appellant also did then and there, with the intent to cause serious bodily injury to an individual, namely, Christopher Mass, commit an act clearly dangerous to human life that caused the death of Mass, by shooting him with a firearm. *Id.* Finally, the Indictment charged that Appellant used or exhibited a deadly weapon, a firearm, during the commission of the above offense. *Id.* This offense is a first-degree felony and is punishable by imprisonment in the Institutional Division of the Texas Department of Criminal Justice for life or for any term of not more than 99 years or less than 5 years in the Texas Department of Criminal Justice and a fine not to exceed $10,000.00. *See* TEX. PEN. CODE § 12.32. Appellant plead not guilty (CR 19) and (RR 13/244). After hearing the evidence, the jury nevertheless found Appellant guilty (RR 18/11). The jury later returned a punishment verdict of confinement in the Texas Department of Criminal Justice, Institutional Division for life (RR 22/166). Based upon the jury's verdict, the trial court thereafter sentenced Appellant to life term of confinement in the Texas Department of Criminal Justice,

2

Institutional Division (RR 23/9).

## Statement of Facts

On February 9, 2013, Appellant called 911 and reported he shot Christopher Mass in the parking lot of the Broadway Square Mall in Tyler, Texas (RR 16/275) and (State's Exhibit 63). After arrest, Mr. Neal provided Tyler Police with a recorded statement admitting that he shot Mass, but that he did so in self-defense (RR 16/243). Appellant told officers that went to the mall that morning because it was the release date for a new Air Jordan show (State's Exhibit 63). Upon entering the mall, Appellant walked over the Chick-Fil-A restaurant to talk with an acquaintance, Jimmy Whitt. He then became involved in a verbal dispute with a subject he knew only as Dews ("Jonathan Dews"). *Id.*

Apparently back when Dews was in prison, Appellant had a conversation with his wife about whether she would stay married to him after his release (RR 14/36). Although Appellant tried to deescalate the situation, Dews insisted he wanted to fight him (RR 16/243). Appellant told police that as he exited the mall, he noticed who he later would learn was Mass standing in front of Champs sporting goods (RR 16/243). As Appellant continued out the door he stopped to speak to the manager of Champs, Kenesha Mayfield, and told her that there were some guys "trippin" and that he was going outside to send his girlfriend, Tamara Norris, who was waiting outside in the car in to pay for the shoes. *Id.*

As Neal approached his girlfriend's vehicle he told her that some guys were in the mall "trippin" and asked her to go in and pay for the shoes (RR 15/89 and 92). Appellant then walked from the driver's side of the vehicle to the back right door and check on his belongings in the backseat. *Id.* As he did so, Appellant noticed that Mass standing near an adjacent green Buick vehicle that was parked right next to his girlfriend's blue Ford Fiesta vehicle. *Id.* Appellant also noticed that Dews was standing close to him. *Id.*

Appellant then saw Mass open the door of the green Buick and put is sweatshirt in it (RR 15/59). Appellant believed that Mass reached into the vehicle to retrieve a weapon and so he retrieved his .40 caliber semi-automatic pistol from inside a black bag in the Fiesta (RR 16/235). Mass then began to walk toward the rear of the Buick and Appellant overheard Dews state that he was a "gangster" (State's Exhibit 63). Appellant believed at that moment that his life was in danger and he shot and killed Mass in self-defense and fired a shot in the direction of Dews. *Id.*

## Summary of Arguments

In his first issue, Appellant contends the State failed to prove that Appellant did not fire upon and kill Mass in self-defense. In his second issue, Appellant maintains the trial court erred in limiting Appellant's ability to elicit testimony

4

establishing the alleged victim, Moss', gang affiliation and how that evidence demonstrated his justified use of deadly force in this case.

Appellant maintains in his third issue that the trial court erred in limiting Appellant's cross-examination of State's witnesses to establish the alleged victim, Moss', gang affiliation and how that evidence demonstrated his justified use of deadly force in this case.

In his fourth claim, Appellant argues that the trial court erred in granting the State's proposed jury instructions negating Appellant's claim of self-defense. Appellant submits in his fifth claim that the trial court erred in denying Appellant's request for a necessity instruction.

In his sixth claim, Appellant maintains that the trial court erred in its ruling that Appellant could not elicit testimony from defense witness, Wilmon Davis, that shortly prior to the shooting someone in the mall utter "he might get shot." In his seventh claim, Appellant argues that trial counsel rendered ineffective assistance of counsel in failing to challenge whether the State's gang identification witness was qualified to render an expert opinion that Appellant was affiliated with a gang. In his final claim, Appellant argues [Possible Punishment Charge Error] TBD.

## Issue Number 1

The State failed to prove that Appellant fired upon and killed Mass in self-defense.

## Standard of Review-Sufficiency of Evidence

When reviewing a sufficiency challenge on the issue of self-defense, this Court views the evidence in the light most favorable to the verdict to see if any rational trier of fact could have found (1) the essential elements of murder beyond a reasonable doubt, and (2) against appellant on the self-defense issue beyond a reasonable doubt. *See Saxton v. State,* 804 S.W.2d 910, 914 (Tex. Crim App. 1991).

The jury is the exclusive judge of the credibility of the witnesses and of the weight to be given to their testimony. *Jones v. State,* 944 S.W.2d 642, 647 (Tex. Crim. App.1996). Reconciliation of conflicts in the evidence is within the exclusive province of the jury. *Id.* The Court resolves any inconsistencies in the testimony in favor of the verdict. *Curry v. State,* 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

## Argument

Appellant challenges both the sufficiency of the evidence to support the essential elements of the charged offense—murder and whether a rational fact finder could have found beyond a reasonable doubt against him on the self-defense issue.

In evaluating sufficiency of the evidence under the *Jackson* standard, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of murder beyond a reasonable doubt. *Brooks' v. State, 323* S.W.3d 893, 912

(Tex.Crim.App.2010) (referring to *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)); *Hartsfield v. State,* 305 S.W.3d 859, 863 (Tex.App.-Texarkana 2010, pet. ref'd) (citing *Clayton v. State,* 235 S.W.3d 772, 778 (Tex.Crim.App.2007). Because the State carries the burden of persuasion to disprove self-defense beyond a reasonable doubt, we review a challenge to the sufficiency of the evidence supporting a jury's rejection of a claim of self-defense under the *Jackson* standard. *See Brooks,* 323 S.W.3d at 912; *Smith v. State,* 355 S.W.3d 138, 145 (Tex.App.-Houston [1st Dist.] 2011, pet. ref'd); *see also Miranda v. State,* 350 S.W.3d 141, 147 (Tex.App.-San Antonio 2011, no pet.).[3] We examine legal sufficiency under the direction of the *Brooks* opinion while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State,* 214 S.W.3d 9, 13 (Tex.Crim.App.2007) (citing *Jackson,* 443 U.S. At 318–19); *see Clayton v. State,* 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

A person is justified in using deadly force against another "when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful deadly force." Tex. Penal Code Ann. § 9.32(a) (2) (A) (West 2011). "Deadly force" is force "intended or known by the actor to cause, or in the manner of its use or intended use is capable of causing, death or serious bodily injury." *Id.* § 9.01(3).

There, as here, there is a claim of self-defense that is rejected by the jury, this Court must consider all the evidence in the light most favorable to the verdict and determine whether, based on the evidence and reasonable inferences therefrom, a rational fact-finder could have found beyond a reasonable doubt (1) the essential elements of the offense and (2) against the appellant on the self-defense issue. *Darkins v. State,* 430 S.W.3d 559, 565 (Tex. App.-Houston [14th Dist.] 2014, pet. ref 'd) (citing *Saxton,* 804 S.W.2d at 913). Because self-defense is an issue of fact to be determined by the jury, the jury is free to accept or reject the defensive issue. *Medina v. State,* 411 S.W.3d 15, 21 (Tex. App.-Houston [14th Dist.] 2013, no pet.) (citing *Saxton,* 804 S.W.2d at 913–14). A jury's guilty verdict is an implicit rejection of the appellant's self-defense claim. *Saxton,* 804 S.W.2d at 914.

## A. Legal Sufficiency—Murder

A person commits murder if he intentionally or knowingly causes the death of an individual or if he intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual. Tex. Penal Code Ann. § 19.02(b) (1), (b) (2) (West 2011). However, under certain circumstances, self-defense justifies the use of deadly force. *Morales v. State,* 357 S.W.3d 1, 7 (Tex. Crim. App. 2011). As relevant here, a person is justified in using deadly force against another (1) if he would be justified in using force against the other under section 9.31 of the penal code, and (2) when and to the degree he reasonably

8

believes the deadly force is immediately necessary to protect himself against the other's use or attempted use of unlawful deadly force. Tex. Penal Code Ann. § 9.32(a) (1) and (a) (2) (A) (West 2011). As relevant to this case, section 9.31 of the penal code justifies force "when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." *Id.* § 9.31(a) (West 2011).

Appellant had no motive or state of mind to attack and kill Mass based on the evidence presented to the jury. Although he did possess and used a firearm to shoot Mass 3 times, he had no intent to cause the death or serious bodily injury. Appellant admitted to police that when he shot, he had no intention of killing Mass (RR 16/241). Appellant's voluntary statement reasons he shot Mass because he feared for his life. *Id.*

## B. Legal Sufficiency of Evidence of Self Defense

The initial burden to produce evidence supporting self-defense rests with the defendant. *Zuliani v. State,* 97 S.W.3d 589, 594 (Tex.Crim.App.2003); *Saxton v. State,* 804 S.W.2d 910, 913 (Tex. Crim. App. 1991). Once the defendant produces some evidence, the State bears the ultimate burden of persuasion to disprove the raised defense. *Zuliani,* 97 S.W.3d at 594; *Saxton,* 804 S.W.2d at 913–14. This burden of persuasion does not require that the State to produce evidence, but it does require that the State prove its case beyond a reasonable doubt. *Zuliani,* 97 S.W.3d at 594;

9

*Saxton,* 804 S.W.2d at 913. The issue of self-defense is a fact issue to be determined by the jury, which is free to accept or reject any defensive evidence on the issue. *Saxton,* 804 S.W.2d at 913–14. If the jury finds the defendant guilty, then it implicitly finds against the defensive theory. *Id.* at 914.

In reviewing the legal sufficiency of the evidence to support the fact finder's rejection of a defensive issue, "we look not to whether the State presented evidence which refuted appellant's self-defense testimony, but rather we determine whether after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact would have found the essential elements of murder beyond a reasonable doubt and also would have found against appellant on the self-defense issue beyond a reasonable doubt." *Id.* at 914; *see also Kirk,* 421 S.W.3d at 777. The evidence the jury heard in this case was factually insufficient evidence to reject Appellant's self-defense claim. The jury heard evidence that at the time Appellant shot Mass, he feared for his life. *See, e.g., Saxton,* 804 S.W.2d at 914.

## C. **Relevant Evidence from the Trial**

Under Texas law of self-defense, a defendant's conduct is excused if h e formed a reasonable belief that deadly force was immediately necessary to protect himself or a third party from another use or attempted use of unlawful deadly force. See TEX. PENAL CODE, § 9.32. The reasonableness of the belief is measured by the objective standard of an "ordinary and prudent man." See, TEX. PENAL CODE §

10

1.07(42); see also' *Davis v. State*, 104.W.3d 177, 181 (Tex.App.-Waco 2003, no pet.)("Although the jury employs an objective standard to determine the reasonableness of the defendant's belief, it must view the facts from the defendant's perspective."). Accordingly, Appellant is entitled to acquittal if a person in his position reasonably believed the deadly force was immediately necessary to protect himself or another against the Dews' and Mass' use or attempted use of unlawful deadly force. TEX. PENAL CODE §§ 9.32, 9.33.

"Deadly force" means force that is intended or known by the actor to cause, or in the manner of its use or intended use is capable of causing, death or serious bodily injury. TEX. PENAL CODE § 9.01(3). "Reasonable belief means a belief that would be held by an ordinary and prudent man in the same circumstances as the actor. TEX. PENAL CODE § 1.07(a) (42).

"The greater weight and preponderance of the credible evidence herein shows that [Neal] acted in self-defense from the apparent danger created by the attack of multiple assailants …, so that it is manifestly unjust" that he was convicted of murder. The jury's verdict to the contrary is, therefore, against the great weight of the evidence. Appellant was entitled to a verdict of not guilty as his acts were clearly in the defense of himself.

The State presented no evidence by which a rational finder of fact could find Appellant's use of deadly force to be unjustified, as Appellant was acting to defend himself. Appellant did not initially possess a deadly weapon and instead retrieved

his firearm from inside the vehicle only after he was confronted by Mass and Dews in the parking lot. *See, supra.* Assuming arguendo that the State brought sufficient evidence that Appellant possessed a deadly weapon, the State brought no evidence that Appellant would not have sufficient justification for arming himself with the firearm. It was not disputed that Mass and Dews were both large men (RR 16/287), that they pursued Appellant outside of the mall in order to fight him (RR 14/44), and that they were the aggressors in this exchange.

Consequently, the jury's rejection of his justification of self-defense and the jury's subsequent verdict was not rational. Accordingly, this Court should, as it must, enter an order reversing the judgment entered in the court below and thereafter enter a judgment of acquittal.

Therefore, the evidence is legally insufficient to support Appellant's conviction for murder because there was sufficient evidence that the Appellant acted in self-defense. It was only through speculation that the jury could have found beyond a reasonable doubt that Appellant did not reasonably believe the force he used against Mass was necessary to defend himself. Such speculation does not equate with beyond a reasonable doubt and cannot stand. No rational finder of fact could have found beyond a reasonable doubt that Appellant was not defending himself. For these reasons, Appellant's conviction of murder must be reversed and reformed to show an acquittal. *Burks v. United States*, 437 U.S. 1, 98

S.Ct. 2141, 57 L.Ed.2d 1 (1978); *Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978).

## Issue Number 2

The trial court erred in limiting Appellant's ability to elicit testimony establishing the alleged victim, Mass', gang affiliation and how that evidence demonstrated Appellant's justified use of deadly force in this case.

## Standard of Review

The trial court's decision to exclude 404(b) evidence is reviewed by this Court for an abuse of discretion. *McDonald v. State,* 179 S.W.3d 571, 576 (Tex. Crim. App. 2005).

## Argument

The trial court erred in limiting Appellant's ability to elicit testimony establishing the alleged victim, Mass', gang affiliation and how that evidence demonstrated his justified use of deadly force in this case. Prior to the start of the State's case, Appellant requested that the trial court admit evidence that the alleged victim, Christopher Mass, was as suspected member of the violent street gang known as the West Side Crips (RR 13/290) (this information was provided to Appellant in a communication to defense counsel from the State's gang expert, Tyler Police Detective Chris Miller) (RR13/10 and 287).

> Based on that letter and based on my conversation with Detective Miller, I believe that there is strong evidence that Chris Miller -- excuse me -- Chris Mass, the deceased, was an active member of the West Side Rolling Crips, a gang here in Tyler …

*Id.*

Appellant argued that this evidence was relevant to show Mass' reputation has a "thug" and to establish his intent at the time of the shooting (RR 13/288). The State's position was that because Appellant did not know Mass, he had no knowledge of his violent character prior to the shooting (RR13/290). The State added that Mass' gang affiliation would not be admissible because there was no evidence to suggest that he was the "first aggressor." *Id.*

The trial court sided with the State noting that the gang evidence was not admissible because there was no evidence adduced pretrial to suggest Appellant knew Mass (RR 14/11). The court added that although there was a very narrow exception in the law for admissibly of such evidence when the defendant and victim do not know each other, the facts proffered by the parties to that point did not suggest this case fell into that exception. *Id.*

On cross-examination, Jonathon Dews testified that he knew Mass "through friends" (RR 14/97). When defense counsel attempted to expand upon this point to establish that these "friends" he knew Mass through were members of the West Side Crips the State objected citing the motion in limine and the court's prior ruling (RR 14/97-98). The court sustained the State's objection and excluded Appellant from exploring this area further (RR 14/98).

Appellant again attempted to elicit similar evidence of Mass' gang

14

affiliation through the testimony of Jimmy Whitt (RR 15/4). Whitt testified that he knew Mass "from the streets." *Id.* The State immediately objected that this line of questioning opened the door to character evidence concerning Mass' gang membership (RR 15/4-5). Again, Appellant was forced to abandon this line of questioning due the trial court's ruling in limine *Id.* (the trial court granted the State's motion in limine and excluded any gang evidence until, and if, that evidence became relevant) (RR 13/6).

Whitt also testified that he knew another State witness and friend of Mass, Quintin Smith, from "in the streets" (RR 15/22). Defense counsel later asked Quintin Smith how he knew Mass and Smith said he knew him from "being out, clubs, stuff like that" (RR 15/65). The State again immediately objected citing that this line of questioning also invited violation of their motion in limine concerning Mass' gang membership. *Id.*

Defense counsel responded that when these witnesses continue to respond that they know Mass from "on the street", this sort of testimony opened the door to further inquiry (RR 15/66). Although the trial court allowed Appellant to inquire further, the court's limitation with respect to specific evidence of Mass' gang membership greatly hampered the defense. *Id.*

Although Appellant did not know Mass and was unaware of his character for violence, he was nevertheless entitled to offer evidence of Mass' gang affiliation

15

because it justified has shooting in self-defense. A defendant claiming self-defense in a homicide prosecution may introduce evidence of a deceased's violent character to show the reasonableness of his/her fear of danger or to show the deceased was the first aggressor. *Torres v. State,* 71 S.W.3d 758, 761 (Tex. Crim. App. 2002). The evidence must be admitted through opinion or reputation testimony. Tex. R. Evid. 405(a). The Court of Criminal Appeals in *Mozon v. State*, 991 S.W.2d 841 (Tex. Crim. App. 1999) established what a defendant must prove: (1) to show Defendant's perception of danger was reasonable requires a showing of being aware of the deceased's violent character; or (2) to show the deceased was the first aggressor does not require a showing of Defendant having personal knowledge of the deceased's violent character. *Id.* at 845. Further, the specific bad acts need not be addressed to or known by the defendant in order to be admissible, if they have a purpose apart from character conformity. *Torres v. State.* 71 S.W.3d 758 (Tex. Crim. App. 2002).

Moreover, in *Ex parte Miller,* the Court of Criminal Appeals clarified that evidence of a deceased's reputation for violence is relevant to the Defendant's state of mind. *Ex parte Miller,* 330 S.W.3d 610 (Tex. Crim. App. 2009). The Court of Criminal Appeals called the evidence as "communicated character" because the Defendant is aware of the deceased's "violent tendencies and perceives a danger posed by the victim, regardless of whether the danger is real or not." *Id.* at 618.

16

Here, the Appellant was not trying to prove that the deceased was violent; rather, he was attempting to prove his self-defense state of mind and the reasonableness of the state of mind. The evidence of gang affiliation could lead a jury to conclude that Appellant's use of force was reasonable because he had reason to believe the deceased would attempt an unlawful deadly force.

Appellant sought to introduce evidence that Mass was a member of the West Side Crips for the non-character purpose of establishing his specific intent or motive to attack Appellant. *See* Christopher B. Mueller & Laird Kirkpatrick, Federal Evidence § 103, at 569–70 (2d ed.1994).

> In describing the analogous federal rules, the professor's state, Proof of specific acts of violence by the victim toward the defendant is often admissible to show hostility, plan, intent to inflict harm, and similar matters. Here the argument is not so much that the acts show character, hence conduct in conformity with character, but rather that the acts shed direct light on more particular aspects of the victim's outlook or state of mind toward the defendant, and the proof is admissible under FRE 404(b).

*Id.*

Such extraneous offense evidence is admissible under Texas Rule of Evidence 404(b). *See, e.g., Torres v. State,* 117 S.W.3d 891, 896–97 (Tex. Crim. App. 2003) (defendant was entitled to offer evidence that, several days before the murder, the victim had climbed through his ex-girlfriend's aunt's window and threatened her and her children; this evidence was relevant to show that the deceased had a specific motive or intent to be the first aggressor when he climbed

17

through his ex- girlfriend's bedroom window early one morning and the defendant shot him).

Appellant attempted to establish that the fact Mass was a Crip was probative, specifically with regard to his (Mass') violent and aggressive state of mind toward Appellant on the day of the shooting. *See Torres,* 71 S.W.3d at 762 ("For purposes of proving that the deceased was the first aggressor, the key is that the proffered evidence explains the deceased's conduct."). Such evidence would have justified Appellant's self-defense theory.

Although Rule 404(b) prohibits the admissibility of gang affiliation evidence to show that a person acted in conformity therewith, such evidence is admissible for other purposes, such as proof of motive, intent, or identity. Tex. R. Evid. 404(b); *see also Williams v. State*, 974 S.W.2d 324, 331 (Tex. App.-San Antonio 1998, pet. ref'd.) (finding that evidence of defendant's gang affiliation was admissible to prove motive).

The trial court's ruling that Appellant was not permitted to even hint at Mass' gang membership impeded his ability to justify the shooting in this case as self- defense. This error by the court was and abuse of discretion that harmed Appellant and requires reversal in this case.

## Issue Number 3

The trial court erred in limiting Appellant's cross-examination of State's witnesses to establish the alleged victim, Mass', gang affiliation and how that evidence demonstrated Appellant's justified use of deadly force in this case.

## Standard of Review

The trial court's decision to limit cross-examination is reviewed by the Court under an abuse of discretion standard. *See Matchett v. State,* 941 S.W.2d 922, 940 (Tex. Crim. App.1996).

## Argument

The trial court erred in limiting Appellant's cross-examination of State's witnesses to establish the alleged victim, Mass', gang affiliation and how that evidence demonstrated his justified use of deadly force in this case. Prior to the start of the State's case, Appellant requested that the trial court admit evidence that the alleged victim, Christopher Mass, was as suspected member of the violent street gang known as the West Side Crips (RR 13/290) (this information was provided to Appellant in a letter written by the State's gang expert, Tyler Police Detective Chris Miller) (RR13/10 and 287). The trial court granted the State's motion in limine to exclude such evidence (RR 14/11).

The trial court repeatedly prevented Appellant from cross-examining the State's witnesses concerning their possible ties to a violent street gang. On cross-examination, Jonathon Dews testified that he knew Mass "through friends" (RR 14/97). When defense counsel attempted to expand upon this point to establish that these "friends" he knew Mass through were members of the West Side Crips

19

the State objected citing the motion in limine and the court's prior ruling (RR 14/97-98). The court sustained the State's objection and excluded Appellant from exploring this area further (RR 14/98).

Later in his cross-examination of Mr. Dews, defense counsel attempted to elicit testimony that on the day of the shooting the waistline on Mass pants was down so low that his undershorts were hanging out making him look "like a violent thug" (RR 14/119). The court sustained the State's objection as to the relevancy of this testimony. *Id.* Appellant objected that the trial court's ruling was a limitation on his confrontation rights under the 6th Amendment. *Id.*

The Sixth Amendment should be liberally construed to give appropriate constitutional protection to the defendant. *Chew v. State,* 804 S.W.2d 633, 635 (Tex. App.-San Antonio 1991, pet. ref'd)). Accordingly, the Court of Criminal Appeals has emphasized that the right to cross-examination "includes the right to impeach the witness with relevant evidence that might reflect bias, interest, prejudice, inconsistent statements, traits of character affecting credibility, or evidence that might go to any impairment or disability affecting the witness's credibility." *Virts v. State,* 739 S.W.2d 25, 29 (Tex. Crim. App. 1987). Moreover, any question asked of a witness on cross-examination, which might have a tendency to show the witness' credibility, is always a proper question. *Koehler v. State,* 679 S.W.2d 6, 9 (Tex. Crim. App.1984). Thus, the proper scope of cross-examination includes "all facts and

20

circumstances which, when tested by human experience, tend to show that a witness may shade his testimony for the purpose of helping to establish one side of the cause only." *Id.* (citing *Jackson v. State,* 482 S.W.2d 864, 868 (Tex. Crim. App.1972)).

Although it is true that as it pertains to the Confrontation Clause, "trial judges retain wide latitude ... to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant", such limitations cannot go so far as to drastically curtail a defendant's cross-examination. *See Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986).

In the present case, the trial court's repeated limitation of Appellant's ability to explore Mass' gang ties drastically curtailed his cross-examination as to leave him "unable to make a record from which to argue why [the witness] might have been biased or otherwise lacked that degree of impartiality expected of a witness at trial." *See Davis v. Alaska*, 415 U.S. 308, 318 (1973); *see also Johnson v. State*, 433 S.W.3d 546 (Tex. Crim. App. 2014). The trial court's limitation on Appellant's cross-examination on this subject greatly limited his ability to establish his self-defense claim. If permitted to explore such indicators of street gang affiliation, Appellant would have been able to leave the jury with a "*significantly different impression* of [the witness's] credibility" *Id.* The trial court's error in this respect was an abuse of discretion and necessitates the reversal of Appellant's conviction.

21

## Issue Number 4

The trial court erred in granting the State's proposed jury instructions negating Appellant's claim of self-defense.

## Standard of Review—Jury Instruction Error

This Court reviews jury charge error in a two-step process. *Ngo v. State,* 175 S.W.3d 738, 744 (Tex. Crim. App. 2005). First, to determine whether error exists in the charge. *Id.* If it does, then to review the record to determine whether sufficient harm was caused by the error to require reversal of the conviction. *Id.* When, as in this case, the Appellant properly objected to the error in the jury charge, reversal is required unless the error was harmless. *Id.* at 743.

## Argument

At the close of the evidence in the guilt/innocence trial, the court conducted a charge conference to discuss the proposed jury charge (RR 17/149) (CR 334) (Court's proposed jury charge). Both the State and defense counsel filed proposed jury charges for the trial court's consideration (CR 347) (State's proposed jury charge) and (CR 352-72) (Defendant's proposed jury charge).

Appellant's proposed jury charge stated in part as follows:

If you have a reasonable doubt as to self-defense, you must acquit the Defendant and say by your verdict, "Not Guilty."

Under our law, a person is justified in using force against another wen and to the degree that he reasonably believes the force is immediately necessary to

protect himself against the other's use or attempted use of unlawful force.

…

A person is justified in using deadly force against another if he would be justified in using force against the other in the first place, and when he reasonable believes that such deadly force is immediately necessary to protect himself against the other person's use or attempted use of unlawful deadly force.

…

When a person is attacked with unlawful deadly force, or he reasonably believes he is under attack or attempted attack with unlawful deadly force by one or more persons, and this is created in the mind of such person a reasonable expectation or fear of death or serious bodily injury to himself at the hands of such attacker or attackers, then the law excuses or justifies such person in resorting to deadly force by any means at his command to the degree that he reasonably believes immediately necessary, viewed from his standpoint at the time, to protect himself from such attack or attempted attack.

It is not necessary that there be an actual attack or actual attempted attack, as a person has a right to defend his life from apparent danger as fully and to the same extent as he would had the danger been real, provided that he acted upon a reasonable apprehension of danger, as it appeared to him from his standpoint at the time, and that he reasonably believed such deadly force was immediately necessary to protect himself against the attacker's, or attackers' [sic], use or attempted use of actual or apparent unlawful deadly force.

A person who has a right to use deadly force to defend himself against one alleged attacker also has a right to use deadly force to defend himself against a second or subsequent perceived attacker who is with the first attacker if he reasonably believes that he is in immediate danger of death or serious bodily injury at the hands of either the first or the second or subsequent attacker.

(CR 363-64)

The State's proposed charge requested that the court instruct the jury that

under Texas Penal Code § 9.31:

(b) The use of force against another is not justified: … (3) if the actor

23

consented to the exact force used or attempted by the other; (4) if the actor provoked the other's use or attempted use of unlawful force,

unless: (A) the actor abandons the encounter, or clearly communicates to the other his intent to do so reasonably believing he cannot safely abandon the encounter; and (B) the other nevertheless continues or attempts to use unlawful force against the actor; or (5) if the actor sought an explanation from or discussion with the other person concerning the actor's differences with the other person while the actor was: (A) carrying a weapon in violation of Section 46.02; or (B) possessing or transporting a weapon in violation of Section 46.05.

Tex. Penal Code Ann. § 9.31 (West 2012).

The State essentially argued that Appellant was not entitled to raise a self-defense or multiple assailants claim if he: 1) consented to the exact force used or attempted by the other; 2) provoked the other's use or attempted use of unlawful force; or 3) sought an explanation from or discussion with the other person concerning the actor's differences with the other person while Appellant was either carrying a weapon in violation of Section 46.02; or possessing or transporting a weapon in violation of Section 46.05. (RR 17/169).

Defense counsel objected to the State's proposed charge because it essentially negated the self-defense and multiple assailant instructions previously approved by the trial court (RR 17/172) ("it would be improper to have a counter instruction … in the jury charge that, essentially eliminates Mr. Neal's right to self-defense … protection under the circumstances of this case"). *Id.*

25

The trial court overruled Appellant's objection and included the following instructions in the jury charge:

> The use of force against another is not justified … (3) if the actor provoked the other's use or attempted use of unlawful force; or (4) if the actor sought an explanation from or discussion with the other person concerning the actor's differences with the other person **while the actor was unlawfully carrying a handgun.**

(CR 335) (emphasis added).

Although the trial court included a self-defense and multiple assailants instruction in the final charge (CR 335-36), the inclusion of the additional instruction quoted supra essentially negated Appellant's affirmative defenses and thereby cancelled-out the self-defense and multiple assailants' instructions.

The evidence presented at trial in this case in no way, shape or form suggested that Appellant sought an explanation or discussion with Mass and/or Dews at the time he armed himself with a firearm. To the contrary, the evidence is undisputed that Mass and Dews followed Appellant outside the mall and that they confronted him in the parking lot just prior to Appellant retrieving his firearm from the backseat of his girlfriend's vehicle. The same holds true with respect the absence of any provocation of Mass and Dews by Appellant.

A defendant is entitled to an instruction on self-defense if the issue is raised by the evidence, whether that evidence is strong or weak, un-impeached or contradicted, and regardless of what the trial court may think about the credibility of the defense." *Gaspar,* 327 S.W.3d 349, 356 (Tex. App.—Texarkana 2010, no pet.) (citing *Ferrel v. State,* 55 S.W.3d 586, 591 (Tex. Crim. App. 2001). There must be some evidence, when viewed in the light most favorable to the defendant, will support the claim. *Id.* (citing *Ferrel,* 55 S.W.3d at 591; *Hill v. State,* 99 S.W.3d 248, 251 (Tex. App.-Fort Worth 2003, pet. ref'd)). "[A] defense is supported (or raised) by the evidence if there is some evidence, from any source, on each element of the defense that, if believed by the jury, would support a rational inference that that element is true." *Id.* (quoting *Shaw v. State,* 243 S.W.3d 647, 657 (Tex. Crim. App. 2007)).

Appellant cited *Barrios v. State*, 389 S.W.3d 382 (Tex. App.—Texarkana 2012) in support of his claim that his alleged unlawful possession of a firearm did not negate his justified use of force in this case. In *Barrios*, the defendant objected that the trial court erred in failing to submit a self-defense instruction. *Id.* at 393. The State argued that the facts did not support a self-defense instruction because Barrios was engaged in other criminal activity as defined under § 9.31(a) (3), namely violation of the federal law concerning possession of a firearm by an illegal

27

immigrant. *Id.* The Texarkana Court of Appeals ultimately held that § 9.31(a) (3) of the Texas Penal Code did not encompass "other criminal activity" to include a violation of a federal criminal code. *Id.* The court ultimately held that Barrios was not entitled a self-defense instruction because he failed to offer any proof that he feared for his own safety. *Id.* at 394.

The court also noted, however, that had Barrios presented sufficient proof of fear, the simple fact he was also engaged in other criminal activity at the time of the shooting would not have negated his right to a self-defense instruction. *Id.* at 393. Instead, such a finding of engagement in other criminal activity would have simply removed the presumption that his actions were reasonable under § 9.31. *Id.* Stated otherwise, Barrios would have been entitled to the self-defense instruction but would have also had the burden of proving his actions were reasonable.

In the present case, defense counsel argued that the reasoning in *Barrios* did not negate Appellant's right to claim self-defense if it was proven to the jury that he unlawfully possessed a firearm. Counsel argued that *Barrios* did not negate self-defense, but that it simply took away a defendant's presumption of reasonableness. While defense counsel was correct in this respect, *Barrios* also notes that "commission of a crime under Section 9.31(a) (3) removes the presumption of reasonableness, whereas commission of acts under Section 9.31(b) renders the use of force against another unjustified." *Barrios*, 389 S.W.3d at 394. The court in the

28

present case nevertheless wrongly construed *Barrios* as supporting the proposed instruction and as a consequence negating Appellant's self-defense claim.

The court noted that Barrios was accused a carrying a shotgun while outside of his vehicle and that this act by Barrios did not trigger any "illegality" under the law (RR 17/176) ("concealed handgun weapons, though, make a completely different event; and that's what we're dealing with in this case. That this person [Barrios] was brandishing a shotgun at the event in question, there's no unlawful carrying of a weapon charge that could be made"). *Id.* The trial court presumed that since there was no argument raised in *Barrios* concerning the unlawful carrying of firearm under § 9.31(b) (5) (A), and no other authority on point presented by the parties, that the State's proposed instruction was appropriate (RR 17/176).

The court, however, failed to consider the fact that the instruction under § 9.31(b) (5) (A) requires that for self-defense to be "unjustified", the actor must have "sought an explanation from or discussion with the other person concerning the actor's differences with the other person **while the actor was unlawfully carrying a handgun.** (CR 335) (emphasis added). Nothing in the trial record even remotely suggests that at the time Appellant retrieved his firearm from the rear of his girlfriend's vehicle that he sought an explanation or discussion from either Mass or Dews (RR 17/184-85)

> You Honor, I object to this because the facts and evidence that were presented from the witnesses, particularly Detective Shine, indicate that the Defendant never sought a meeting with Mr. Mass, ever; that he never had a conversation with Mr. Mass; and that he never met or know Mr. Mass before the shooting.

*Id.*

As a consequence, the court's instruction had no place in the charge.

A charge on provoking the difficulty is properly given when: (1) self-defense is an issue; (2) there are facts in evidence which show that the deceased made the first attack on the defendant; and (3) the defendant did something intended and calculated to bring on the difficulty in order to have a pretext for self-defense. *See Matthews v. State,* 708 S.W.2d 835, 837–38 (Tex. Crim. App. 1986).

In *Bumguardner v. State*, 963 S.W.2d 171, 175 (Tex. App. 1998), Bumguardner was charged with murder for shooting a man, Hinton, who was seeing his wife. *Id.* at 172. The evidence established that on the day of the shooting, a witness overheard Bumguardner say he was going to kill Hinton. *Id.* at 175. That same witness also testified that on the night prior to the shooting, Bumguardner admitted to her that he had been looking for Hinton and his wife while he was carrying a gun. *Id.* On the day of the shooting, Bumguardner confronted his wife and Hinton in a convenience store and had words with them. *Id.* The court concluded that this established that Bumguardner and Hinton "had differences with each other." *Id.* Bumguardner testified that he packed a gun and went to a nightclub to look for his

30

wife. As Bumguardner exited the bar and walked toward his truck he confronted Hinton. *Id.* ("Bumguardner was upset and angry and words were exchanged … [he] demanded to know where his wife was"). The court ultimately concluded that the § 9.31(b) (5) (A) instruction was justified by the facts of the case because:

Evidence exists which shows that Bumguardner had differences with Hinton. **Bumguardner's demand to know where Sheila was and yelling at Hinton tends to show that he sought an explanation or discussion with Hinton while unlawfully carrying a gun**. Therefore, this evidence raises the issue that Bumguardner sought an explanation from Hinton and the court properly submitted this instruction to the jury.

*Id.* at 176 (emphasis added).

While the facts set forth in the *Bumguardner* opinion justified the court's instruction, the facts in the present case simply do not. In this case, there was no evidence in the record to suggest that Appellant carried his firearm on his person at the time he had his verbal confrontation with Dews and while in the presence of Mass.

Also problematic about the court's charge is the fact that there was no evidence establishing that Appellant unlawfully carried a firearm at the time he retrieved it from the back of his girlfriend's vehicle. Section 46.02 of the Texas Penal Code provides that:

A person commits an offense if the person intentionally, knowingly, or recklessly carries on or about his or her person a handgun, illegal knife, or club if the person is not: (1) on the person's own premises or premises under the person's control; or (2) inside of or directly en route to a motor

31

vehicle or watercraft that is owned by the person or under the person's control. (a-1) A person commits an offense if the person intentionally, knowingly, or recklessly carries on or about his or her person a handgun in a motor vehicle or watercraft that is owned by the person or under the person's control at any time in which: (1) the handgun is in plain view; or (2) the person is:

(A) engaged in criminal activity, other than a Class C misdemeanor that is a violation of a law or ordinance regulating traffic or boating;

(B) prohibited by law from possessing a firearm; or (C) a member of a criminal street gang, as defined by Section 71.01.

Tex. Penal Code Ann. § 46.02 (West).

Appellant was not a convicted felon at the time he retrieved the firearm from the vehicle. At the time Appellant retrieved the firearm, he was acting in self-defense and was therefore not acting in violation of any criminal activity. Prior to the shooting, Appellant retrieved the firearm from his bag in the back floorboard of his girlfriend's vehicle. Therefore the firearm was not in plain view inside the vehicle. At the time shooting, Appellant's girlfriend was on her way into the mall to purchase Appellant's shoes. Accordingly, her vehicle was under Appellant's care and control. According to Detective Miller, Appellant was not a member of any known street gang. Consequently, there was no evidence offered at trial to support a finding that Appellant unlawfully carried a weapon. The court made no actual finding as to why Appellant was prohibited from possessing a firearm. The court therefore erred in allowing the § 9.41(b) (5) (A) jury instruction to go before the jury.

The trial court's error in allowing this instruction to go before jury had an undeniable harmful impact upon the verdict in this case. There can be no dispute

32

the trial court's ruling to allow such an unsubstantiated charge to go before the jury was devastating to Appellant's self-defense case. As written, the instruction altogether negated his justification for the shooting. *See Ngo,* 175 S.W.3d at 744 (noting that to jury charge error exists if there was sufficient harm was caused by the error to require reversal of the conviction).

It would be hard to envision a situation where Appellant suffered more harm by the court's undoing of the self-defense and multiple assailants instructions. Defense counsel extensively voir dired the jury on this issue and this was these were the sole defensive issues raised at trial. By denying Appellant the right to present the issues of self-defense and multiple assailants as defense to the charge, the trial court left the jury with no other possible alternative but to convict Appellant of murder.

The third factor in the *Almanza* analysis is the jury argument. This factor also weighs heavily in favor of Appellant. *See Dickey v. State*, 22 S.W.3d 490, 496 (Tex. Crim. App. 1999) (noting that during the closing arguments, the prosecutor made several references to the multiple-assailants theory, despite the absence of said instruction in the charge). The prosecutor made repeated references in closing that Appellant's use of force was not justified:

> There was no force being used against Ricky Neal. There was absolutely not a stitch of evidence that said Ricky Neal was being attacked, was being punched, was being struck by a foot, nothing. Nothing.
> …
> Use of force is not justified, period. Now, you're going to hear, "Well, wait a

minute. He felt threatened. He felt threatened by Christopher Mass."

(RR17/197-98).

> Why did Christopher Mass go out there? Because a buddy of his was getting in a fight with this cold-blooded murderer. He went out there, just like anybody would who they know is going to get in a fight. He walks outside behind him; stands 20 feet from Ricky Neal. According to Ricky Neal, 20 feet. Jon Dews is in front of him. Throws his hoodie in the car, comes around, and stands there, just like this.

(RR 17/215).

The State conceded during closing argument that Dews and Mass pursued Appellant out of the mall with the full knowledge that a fight was about to happen. It's therefore laughable for the State to then suggest that Appellant had no reason to expect that he was in danger when he saw Dews and Mass pursue him outside the mall. This is especially ludicrous when the prosecutor himself confirmed in his closing that Dews was went out there to fight Appellant. Moreover, it was the prosecutor who also conceded in closing that Mass followed Dews outside with the full knowledge that a fight was about to occur. And what did the prosecutor acknowledge that Mass did as soon as he got to his car? He took his hoodie off, thereby communicating to Appellant that he too planned to participate in the fight.

Appellant would therefore submit that the court's decision to negate his self-defense and multiple assailant instructions constitutes clear error and demands a reversal.

# Issue Number 5

The trial court erred in denying Appellant's request for a necessity instruction.

## Standard of Review—Denial of Proposed Instruction

This Court employs a two-step analysis when evaluating jury charge error. *See Abdnor v. State,* 871 S.W.2d 726, 731 (Tex. Crim. App. 1994). Initially, this Court determines whether error occurred and then evaluates whether sufficient harm resulted from the error to require reversal. *Wilson v. State,* 391 S.W.3d 131, 138 (Tex. App.–Texarkana 2012, no pet.) (citing *Abdnor,* 871 S.W.2d at 731–32).

## Argument

Appellant submits that reversible error occurred when the trial court denied his requested necessity instruction (RR 17/187-89) ("How do those facts, undisputed, admitted by your client to the jury, entitle him to any lesser charge other than outright murder"). Appellant's proposed necessity instruction stated that "when a person reasonably believes his conduct is immediately necessary to avoid imminent harm and the desirability and urgency of avoiding the harm clearly outweigh, according to ordinary standards reasonableness … that person's conduct is justified …." (CR 364). Appellant ask that if the jury believed "from the evidence that on the occasion in question the Defendant reasonably believed, viewed from the standpoint of the Defendant at the time, that his conduct of shooting his pistol at Christopher Mass was immediately necessary to avoid imminent harm … then [he] should be acquitted" (CR 364-65).

An accused has a right to an instruction on necessity as a defense if it is raised by any evidence, however weak. *See Hamel v. State,* 916 S.W.2d 491, 493 (Tex. Crim. App. 1996). One element of a necessity defense is that the accused reasonably believes that his otherwise illegal conduct is immediately necessary to avoid imminent harm. *See* Tex. Pen. Code Ann. § 9.22(1) (Vernon 1994). In another context the Court of Criminal Appeals construed "imminent" bodily injury to require a present, not a future threat. *See Devine v. State,* 786 S.W.2d 268, 270 (Tex. Crim. App. 1989). In interpreting § 9.22 one court has held that imminent harm occurs when there is an emergency situation, and that conduct is immediately necessary if the actor is required to make a split-second decision. *See Smith v. State,* 874 S.W.2d 269, 273 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd). In contrast, fear induced by one's presence in a high crime area is not sufficient evidence of immediate necessity to avoid imminent harm to justify unlawfully carrying a handgun. *See Johnson v. State, 650* S.W.2d 414, 416 (Tex. Crim. App. 1983).

The plea of justification based upon necessity, like a plea of self-defense, must be assessed from the standpoint of the accused. The jury instruction is not called for unless there is evidence from the accused admitting the offense but claiming justification for having committed the offense because of other facts. *See Pentycuff v. State,* 680 S.W.2d 527 (Tex. App.—Waco 1984, pet. ref'd); *Klein v. State,* 662 S.W.2d 166 (Tex. App.—Corpus Christi 1983, no pet.). In the present case,

36

defense counsel urged that Appellant was justified in raising a necessity defense. As discussed supra, Appellant was pursued outside of the mall by Mass and Dews and opened fire on them out of a genuine fear for his life. When Appellant observed Mass reach into his vehicle, he became in fear that Mass would retrieve a weapon and cause him serious bodily injury. In response, Appellant hastily retrieved his firearm from inside his girlfriend's vehicle and opened fire on Mass and Dews. Appellant did nothing while outside in the parking lot to provoke this advance by Dews and Mass and he was therefore entitled to an instruction under the necessity.

Deadly force is justified if the defendant would be justified in using force against the other, if a reasonable person in the actor's situation would not have retreated, and when and to the degree he reasonably believes the deadly force is immediately necessary to protect himself against the other's use or attempted use of unlawful deadly force. *See Carmen v. State*, 276 S.W.3d 538, 545 (Tex. App. 2008) (citing Tex. Penal Code Ann. § 9.32). The use of force against another is not justified if the actor provoked the other's use or attempted use of unlawful force unless the other nevertheless continues or attempts to use unlawful force against the actor. *Id.* § 9.31(b) (4) (B). A defendant "is justified in defending against danger as he reasonably apprehends it" as viewed in light of the evidence of the overt acts and words by the complainant, and there is no additional requirement that the jury find that the complainant was actually using or attempting to use unlawful deadly force against

37

appellant. *Guilbeau v. State,* 193 S.W.3d 156 160 (Tex. App.—Houston (1st Dist.) 2006); see *Lavern v. State, 48* S.W.3d 356, 360–61 (Tex. App.-Houston [14 Dist.] 2001, pet. ref'd); *Halbert,* 881 S.W.2d at 127; *Semaire v. State,* 612 S.W.2d 528, 530 (Tex. Crim. App. 1980).

Viewing the evidence in a light favorable to Appellant, the circumstances surrounding the shooting support the Appellant's reasonable belief that unless he resorted to deadly force, Dews and Mass would cause him serious bodily injury. *See Guilbeau,* 193 S.W.3d at 159–61. The trial court's denial of the necessity instruction once again resulted in a negation of his self-defense claim. *See Bumguardner,* 963 S.W.2d at 175 (noting that a charge limiting a defendant's right to self-defense under this section is properly given when (1) self-defense is an issue; (2) there are facts in evidence that show that the defendant sought an explanation from or discussion with the victim concerning their differences; and (3) the defendant was unlawfully carrying a weapon). The trial court therefore erred in refusing to charge the jury as to necessity concerning Appellant's need to defend himself with deadly force. The error occasioned by the court cannot be considered harmless because there was compelling evidence in the record to justify Appellant's belief that his life was in danger when both Mass and Dews exited the mall and confronted him in the parking lot. By denying the necessity charge, Appellant suffered great harm in his ability to demonstrate to the jury that his actions were necessary under the self-

defense affirmative defense. *But see Butler v. State*, 663 S.W.2d 492, 496 (Tex. App. 1983) aff'd, 736 S.W.2d 668 (Tex. Crim. App. 1987) (noting that in a murder case, however, where self-defense becomes the "immediately necessary" conduct, article 9.22 is rendered inapplicable). The undersigned would submit that this rule of law should be revisited as it applies to the facts of this case because as noted supra in Issue 4, the trial court all but negated Appellant's self-defense chances at the jury charge stage.

Here, because Appellant made a proper objection at trial, reversal is required if the error is "calculated to injure the rights of defendant, or unless it appears from the record that the defendant has not had a fair and impartial trial." *See Almanza*, 686 S.W.2d at 171 (noting that once an objection to a charge is properly preserved, this Court must reverse the conviction if appellant suffered any actual harm by the omission of the defensive instruction); *see also Abdnor v. State*, 871 S.W.2d 726 (Tex. Crim. App. 1994) (en banc) (holding that the level of harm an appellant must demonstrate as having resulted from the erroneous jury instruction depends on whether the appellant properly objected to the error)*; see also* Tex. Code Crim. Proc. Ann. art. 36.19 (West 2006).

## Issue Number 6

The trial court erred in its ruling that Appellant could not elicit testimony from defense witness, Wilmon Davis, that shortly prior to the shooting someone in the mall utter "he might get shot."

## Standard of Review

An appellate court reviews a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *See Weatherred v. State,* 15 S.W.3d 540, 542 (Tex. Crim. App. 2000).

## Argument

The trial court erred in its ruling that Appellant could not elicit testimony from defense witness, Wilmon Davis, that shortly prior to the shooting someone in the mall uttered the phrase "he might get shot." (RR 17/97). Defense counsel offered Mr. Davis testimony regarding this hearsay statement outside the presence of the jury. He testified that prior to the shooting, he was in the mall doing his walking exercises when he passed a group of males with "sagging" pants standing out front of Champs (RR 17/95). This group caught Davis' attention because he constantly admonishes his grandson not to wear his pants in that fashion because he looks like a gangster. *Id.* Mr. Davis distinctly recalled that Mr. Neal was not one of the men standing in this group (RR 17/95). As Mr. Davis made his last round of the mall, he overhead one of the males in that group say "he might get shot" (RR 17/96-97). As Mr. Davis later exited the mall, he saw Mass dead on the ground (RR 17/97). Davis recalled that Mass was one of the males standing in the

54

group that he overheard say either "he might get shot" or "he's going to get shot." *Id.* The last time Davis saw Mass in the mall, he saw Mass walking "out in front of J.C. Penney and went back on the east side, went out that side" (RR 17/100). After the shooting, Davis told Tyler police what he overheard (RR 17/99).

Defense counsel argued that the statement overhead by Davis was admissible as both and an excited utterance and a presence sense impression under the hearsay rules. A present sense impression is "a statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter. *See* Tex. R. Evid. 803(1). There is no question that Davis "immediately after perceiving the event described that event to the Tyler police. The present sense impression exception to the hearsay rule is based upon the underlying premise that the contemporaneity of the event and the declaration ensures reliability of the statement. *Brooks v. State,* 990 S.W.2d 278, 287 (Tex. Crim. App. 1999). The closer the declaration is to the event the less likely there will be a calculated misstatement. *Id.* In the present case, Mr. Davis was interviewed by the police shortly after officers arrived on scene in response to the shooting. Therefore this testimony was admissible.

The trial court excluded Mr. Davis' testimony in part because he could not identify who in the group made the statement (RR 17/85) ("could be, if you can identify whoever the person was. But it sounds like neither side knows who said it, if

55

anyone really did say it"). In *Green v. State,* 876 S.W.2d 226 (Tex. App.--Beaumont 1994, no pet.), a police officer testified, over objection, to a statement "attributed to two unnamed bystanders" that "the man in the brown trench coat was shooting." *Id.* at 227. On appeal, the court noted:

> The record reflects that Officer Chatelain responded quickly to the gunshot occurring only a block away. The two witnesses were running from the direction of the gunshot. They were obviously describing an event that they had perceived almost immediately before encountering Officer Chatelain. Sufficient reliability existed for the statement to be admitted under the hearsay exception of Rule 803(1).

*Id.* at 228.

Just as in *Green*, Davis' testimony in this case had sufficient indicia of reliability and should have been admitted by the trial court. There is no disputing that this testimony was both relevant and probative to the issue of whether Mass and his group of thugs were the aggressors in this case. The proffered evidence by Davis would have certainly aided the jury in understanding the motive and intent of the group of gangsters in the mall prior to Mass exiting and confronting Appellant. *See Anderson v. State*, 15 S.W. 3d 177, 184 (Tex. App.—Texarkana 2000) (noting that statement of mind of the victim is relevant in cases involving defense claims of self- defense, suicide, or accident) *see also;* 2 Barbara E. Bergman & Nancy Hollander, Wharton's Criminal Evidence § 6:22 (15th ed. 1998 & Supp. 2000). The trial court's exclusion of this testimony was therefore an abuse of discretion.

**Issue Number 7**

Trial counsel rendered ineffective assistance of counsel in failing to challenge whether the State's gang identification witness was qualified to render an expert opinion that Appellant was affiliated with a gang.

## Standard of Review-Ineffective Assistance of Counsel

The standard of review for Appellant's complaint of ineffective assistance of counsel is whether counsel's conduct "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."

*Strickland v. Washington, 466* U.S. 668, 686 (1984); see *Davis v. State, 278*

S.W.3d 346, 352 (Tex.Crim.App.2009); *Diaz v. State,* 380 S.W.3d 309, 311 (Tex. App.—Fort Worth 2012, pet. ref'd). The *Strickland* test has two prongs: (1) a performance standard and (2) a prejudice standard. *Strickland,* 466 U.S. at 687.

## Argument

During the punishment trial, the State called Tyler Police Detective Chris Miller to testify that based upon a review of Appellant's tattoos, Miller believed that he was a member of a violent street gang (RR 18/62). Miller testified as to his experience as a police officer, a youth crimes division investigator and his membership in the Texas Gang Investigators Association (RR 18/62-63). He also testified that he had conducted training in the areas of gangs and gang intelligence for the United States Attorney's Office, the Texas Attorney General's Office, University of Texas, Tyler Junior College and the Texas Gang Investigation Association. *Id.* Detective Miller did not testify as to any other qualifications that would be make him an expert in gangs including whether he ever testified in the

57

past as a gang expert and how many times he's been qualified in court as a gang expert. [1]

The State at no point during Miller's testimony before the jury offered him as an expert witness.[2] The State simply asked Miller if he was the "gang guy" a n d Miller responded "[t]hat's what they tell me." (RR 18/64). Defense counsel made no effort whatsoever to challenge Miller's qualifications as expert or the underlying data that he relied upon in reaching his ultimate conclusions in this case. Instead, trial counsel conceded on the record that Miller was an expert in gangs (RR 18/72) ("I do not contest the State's assertion that Detective Miller is an expert. I fully concur with that. That is not my argument").[3] The trial court did overrule counsel's objections under Rules 401, 402 and 403, but made no ruling with respect to the Rule 705(d) objection (RR 18/72) ("Well, I'll overrule the objection. 37.7 is very broad. I don't find, under 401, 402 or 403, that it should be excluded"). Defense counsel failed to press the court for a ruling as to the 705(d)

---

[1] The undersigned is familiar with Detective Miller having previously cross-examined him as gang expert and challenged his opinions on appeal. The undersigned therefore knows that Detective Chris Miller is recognized as an expert witness on criminal street gangs.

[2] After defense counsel objected to Miller's testimony under Texas Rules of Evidence 401, 402, 403 and 705(d), the State responded that "[a]s far as the 705 objection, obviously, Chris Miller has testified—and testified here today—

based upon his training and experience, he's testified as an expert in this court before on numerous occasions. As a matter of fact, I believe that he qualifies as an expert based upon all of those factors that the Court must listen to in determining whether or not somebody is an expert …." (RR 18/72-73).

[3] Trial counsel raised objections under Texas Rules of Evidence 401, 402, 403, and 705(d) as they related to the relevance and probative value of Detective Miller's ultimate opinions because Appellant had a history as "gang affiliations" in Henderson, Texas and those past affiliations did not establish that he had any gang membership in Tyler where the shooting occurred (RR 18/71-72).

objection and Miller was permitted to continue unchallenged with his opinions.

Detective Miller opined that the tattoos he observed on Ricky Neal's body appeared to be a "constant theme" among the Bloods or a Blood set (RR 18/73). Detective Miller thereafter went through photographs taken of each tattoo on Appellant's body and opined that the majority of those tattoos were consistent in on way or another with the Bloods street gang (RR 18/73-83) ("In my opinion it would be a high probability that he would be a member of a criminal street gang [A Piru Blood]") (RR 18/83).

On cross-examination, defense counsel had Miller run through an exhaustive list of the violent street gangs in Tyler (RR 18/84-86). Miller conceded that Appellant was not a "documented" member of any gang in Tyler (RR 18/86) (Miller expanded that the other than the tattoos, he had no evidence to prove Appellant was in an active member of any street gang in Tyler). That was the extent of defense counsel's cross-examination Miller.

## A.     The Problem with Gang "Expert" Testimony

Like all expert testimony, the testimony of gang experts regarding gang membership must meet the relevance and reliability requirements of Texas Rule of Evidence 702. *See* Tex. R. Evid. 702 (West). Rule 702, along with Rules 401, 403, and 703, require the trial judge to act as a "gatekeeper," limiting the testimony of

expert witnesses. *See* Judge Harvey Brown, *Eight Gates for Expert Witnesses*, 36 Hous. L. Rev. 743, 744 (1999)*; see also Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 587 (1993)* (announcing that *Federal Rule of Evidence 702* superseded the general acceptance test for expert witness testimony articulated in *Frye v. United States* seventy years earlier); *Frye v. United States, 293 F. 1013, 1014 (D.C. Cir. 1923)* (promulgating the general acceptance test for the admissibility of expert witness testimony); David E. Colmenero, A Dose of Daubert to Alleviate "Junk Science" in Texas Courtrooms: Texas Adopts the Federal Standard for Determining the Admissibility of Scientific Expert Testimony, *27 Tex. Tech L. Rev. 293, 294 (1996)* (asserting that judges have an affirmative duty to determine relevancy and reliability of expert testimony). Expert testimony offered pursuant to Rule 702 must survive a traditional relevancy analysis under Rules 401 and 402 of the Texas Rules of Evidence. *See E.I. du Pont de Nemours & Co. v. Robinson,* 923 S.W.2d 549, 556 (Tex. 1995) (noting Texas Rule of Evidence 702 requires the evidence to "assist the trier of fact to understand the evidence or to determine a fact in issue").

Additionally, the scientific technique or procedure must be reliable. *See Robinson, 923 S.W.2d at 557.* When determining the reliability of a scientific technique or theory, a trial court may consider any number of factors, including but not limited to: (1) the extent to which the theory has been or can be tested; (2) the extent to which the technique relies upon the subjective interpretation of the expert; (3) whether the theory has been subjected to peer review and/or

publication; (4) the technique's potential rate of error; (5) whether the underlying theory or technique has been generally accepted as valid by the relevant scientific community; and (6) the nonjudicial uses which have been made of the theory or technique. *Id.*; *see also Daubert*, 509 U.S. at 593-94 (stating that many factors are considered when determining reliability).

Texas courts consider the *Daubert/Robinson* factors when deciding whether nonscientific evidence is reliable. *Gammill v. Jack Williams Chevrolet, Inc.*, 972 S.W.2d 713, 726 (Tex. 1998). In cases where the expert's opinion is based more on skill and experience, courts may not find the factors listed in *Daubert* and *E.I. du Pont* helpful in determining the reliability of the expert's testimony. *Gammill*, 972 S.W.2d at 726 (stating that *Daubert* and *Robinson* considerations are not always useful in assessing nonscientific testimony). In these cases, courts are charged with determining whether there is "too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997); *Gammill*, 972 S.W.2d at 726. The crucial inquiry in the "analytical gap" test is whether the expert relied on objective data or experimentation, or subjective interpretations. *See Ford Motor Co. v. Aguiniga*, 9 S.W.3d 252, 263 (Tex. App. - San Antonio 1999, pet. denied) (identifying the concern as whether experts relied on subjective interpretation or on objective data or interpretation). Texas courts have consistently held that expert opinions with little more than a "subjective belief or unsupported speculation" are unreliable and therefore inadmissible. *Gammill*, 972 S.W.2d at 728; *E.I. du Pont de*

*Nemours & Co. v. Robinson*, 923 S.W.2d 549, 557 (Tex. 1995).

In Texas, the analysis employed to determine how the reliability of particular expert testimony is to be assessed is within the trial judge's discretion. *Gammill*, 972 S.W.2d at 726. Further, whether a court analyzes the reliability of an expert's testimony using the Daubert/Robinson factors, the "analytical gap" test, or a combination of the two, "in light of the increased use of expert witnesses and the likely prejudicial impact of their testimony, trial judges have a heightened responsibility to ensure that expert testimony show some indicia of reliability." *Robinson*, 923 S.W.2d at 553. In short, "it is not so simply because 'an expert says it is so.'" *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 712 (Tex. 1997) (quoting *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 421 (5th Cir. 1987)).

In Texas, the reliability and relevance requirements of Daubert apply to both scientific and nonscientific expert testimony. *Gammill,* 972 S.W.2d at 726 (applying *Daubert* to all expert testimony). Texas courts require that a nonscientific expert's skill and experience reflect the relevance and reliability of his testimony in order for the testimony to pass through the methodological gate. *Id.* at 722. And, although "reliability ... does not ... always require an examination of the *Daubert/Robinson* factors ... the gatekeeping reliability requirement of *Daubert* applies to all experts." Judge Harvey Brown, *Eight Gates for Expert Witnesses*, 36 Hous. L. Rev. 743, 803-04 (1999).

Courts are also required to examine the foundational reliability of expert testimony. *Id.* at 823. *Daubert* acknowledged that expert testimony must have "a reliable foundation." *Daubert, 509 U.S. 579, 597 (1993).* "The foundational-reliability gate ... focuses on the reliability of studies, articles, and data from others in the expert's field and the assumptions of the expert." Judge Harvey Brown, *Eight Gates for Expert Witnesses*, 36 Hous. L. Rev. 743, 821 (1999). The expert's testimony that the research is reliable is not enough. *Id.* Simply put, "if the foundational data underlying opinion testimony are unreliable, an expert will not be permitted to base an opinion on that data because any opinion drawn from that data is likewise unreliable." *Merrell*, 953 S.W.2d at 714.

## Issue Number 8

The trial court erred in denying Appellant's request lesser-included offense jury instructions.

### Standard of Review—Denial of Proposed Instruction

This Court employs a two-step analysis when evaluating jury charge error. *See Abdnor v. State,* 871 S.W.2d 726, 731 (Tex. Crim. App. 1994). Initially, this Court determines whether error occurred and then evaluates whether sufficient harm resulted from the error to require reversal. *Wilson v. State,* 391 S.W.3d 131, 138 (Tex. App.–Texarkana 2012, no pet.) (citing *Abdnor,* 871 S.W.2d at 731–32).

At trial, Appellant requested special jury instructions be included the charge for the lesser included crimes of manslaughter (CR 366-67), criminally negligent

homicide (CR 367), deadly conduct (CR 368) (RR 17/182). The trial court denied

Appellant's request for these special instructions.

> Again, just so you're crystal clear with what I think this jury has heard, that the evidence was that your client did the same thing that the admissions say, and that he pulled a gun out. And the gun inadvertently went off and shot this gentleman, yeah, maybe manslaughter, maybe recklessness is there. But whenever you start adding shot after shot, hitting the same person, as I said, I think it would be incredible that any higher court would suggest that, under those facts in this case, that your client would have any right to any lesser included offense charges.

(RR 17/182-83).

Chapter 9 of the Texas Penal Code recognizes certain justifications that, under

Section 2.03, are defenses to prosecution. *See* TEX. PEN. CODE § 2.03(a) ("A

defense to prosecution for an offense in this code is labeled by the phrase: 'It is a

defense to prosecution ...' "); *see also* TEX. PEN. CODE § 9.02 ("It is a defense to

prosecution that the conduct in question is justified under this chapter."). If there is

some evidence that a defendant's actions were justified under one of the provisions of

Chapter 9, the State has the burden of persuasion to disprove the justification beyond

a reasonable doubt. *See* TEX. PEN. CODE § 2.03(d).

In the present case, Appellant raised evidence that he shot Mass while acting

in self-defense, a Chapter 9 justification. *See* TEX. PEN. CODE §§ 9.31 (Self–

Defense), 9.32 (Deadly Force in Defense of Person). Assuming a jury believes that a

defendant's actions were justified under Chapter 9 (or has a reasonable doubt that

the actions were justified under Chapter 9), the plain meaning of Sections 9.02 and

64

2.03 is that the fact-finder may not convict the defendant for an offense based on those actions. *See Alonzo v. State*, 353 S.W. 3d 778, 781 (Tex. Crim. App. 2011).

In the present case, the trial court erred in denying Appellant's request for these lesser-included offense instructions because the evidence at trial, including Appellant's own recorded confession, discussed supra justified inclusion of these instructions in the final  charge.

"[A] lesser-included offense instruction shall be included in the jury  charge if: (1) 'the requested charge is for a lesser-included offense of the charged offense; and (2) there is some evidence that, if the defendant is guilty, he is guilty *only* of the lesser offense.' "Guzman *v. State,* 188 S.W.3d 185, 188 (Tex.Crim.App.2006) (quoting *Hayward v. State,* 158 S.W.3d 476, 478 (Tex.Crim.App.2005)).  Appellant in the present case met both of these burdens at trial.

The first step is a question of law that is determined by the pleadings and does not depend on the evidence produced at trial. *Hall v. State,* 225 S.W.3d 524, 535 (Tex. Crim. App. 2007). An offense is a lesser included offense if: (1) it is established by proof of the same or less than all the facts required to establish the commission of the offense charged; (2) it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission; (3) it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission; or (4) it consists of an attempt to commit the offense charged or an

otherwise included offense. Tex. Code Crim. Proc. Ann. Art. 37.09 (West 2006). "[T]he elements and the facts alleged in the charging instrument are used to find lesser-included offenses [.]" *Hall,* 225 S.W.3d at 535.

"The second step in the analysis should ask whether there is evidence that supports giving the instruction to the jury." *Id.* at 536. "[A]nything more than a scintilla of evidence may be sufficient to entitle a defendant to a lesser charge." *Id.* "[T]he evidence must establish the lesser-included offense as 'a valid, rational alternative to the charged offense.' " *Id.* (quoting *Forest v. State,* 989 S.W.2d 365, 367 (Tex. Crim. App. 1999)).

In this case, the indictment contained a single paragraph alleging murder (CR 1). Under Penal Code section 19.02(b) (1), the indictment alleges that (1) Appellant intentionally or knowingly caused Mass' death shooting him with a firearm. In comparison, the elements of manslaughter would require some proof that Appellant recklessly caused Mass' death by shooting him with a firearm. *Id.* at § 19.04(a). Conversely, the elements of criminally negligent homicide would require proof that Appellant with criminal negligence caused Mass' death by shooting him with a firearm. *Id.* at § 19.05(a) (West 2003).

In this case, the offense as charged and presented to the jury included intentional or knowing murder under section 19.02(b) (1), which requires a culpable mental state. Tex. Penal Code. Ann. § 19.02(b) (1). "The only distinction between an intentional or knowing murder and the lesser offenses of manslaughter and

criminally negligent homicide lies in the culpable mental state accompanying the homicidal act." *Pitonyak v. State,* 253 S.W.3d 834, 846 (Tex. App.-Austin 2008, pet. ref'd). Accordingly, manslaughter, criminally negligent homicide and deadly conduct differ from the charged offense of intentional or knowing murder only in the respect that a less culpable mental state suffices to establish their commission; thus, they are lesser-included offenses of murder as charged and presented to the jury. *See* Tex. Code Crim. Proc. Ann. art. 37.09(3) (West 2006); *see also Pitonyak,* 253 S.W.3d at 846–47; *Pierce v. State,* 234 S.W.3d 265, 269–71 (Tex. App.-Waco 2007, pet. ref'd) (Where indictment charged Pierce with murder under 19.02(b)(1) and (b)(2), the Waco court concluded that manslaughter and criminally negligent homicide were lesser-included offenses of murder as charged in the indictment).

To establish the second prong of the lesser-included offense analysis, Appellant must demonstrate that the evidence at trial raises the issue of manslaughter, criminally negligent homicide and deadly conduct because the jury could have concluded that he did not knowingly or intentionally kill Mass, but either recklessly or negligently caused his death when he fired the fatal shots in his direction. At trial, Appellant's counsel argued that the evidence suggested that Neal fired the shots out of "sudden passion" while he was "stricken with terror" at the events that unfolded before him (RR 17/178). The trial court rejected Appellant's argument (RR 17/182).

Given Appellant's confession that he had no intent to kill Mass at the time

67

the shots were fired, there was proof that the jury could have relied upon to find him guilty of only manslaughter or criminally negligent homicide. Tex. Penal Code Ann. § 6.03(c) (West 2003) (defining "recklessly"); *Id.* at § 6.03(d) (defining "criminal negligence"); *See Guzman,* 188 S.W.3d at 188; *see also Lewis v. State,* 529 S.W.2d 550, 553 (Tex.Crim.App.1975) ("At the heart of reckless conduct is conscious disregard of the risk created by the actor's conduct; the key to criminal negligence is found in the failure of the actor to perceive the risk."). As noted supra, at the time he fired the shots, Appellant stated to police that he had no intention of killing Mass (RR 16/241) (Appellant shot Mass 3 times). Appellant maintained in is voluntary statement that the reason he shot Mass was because he feared for his life. *Id.* Anything more than a scintilla of evidence is sufficient to entitle a defendant to an instruction on a lesser-included offense. *See Goad v. State,* 354 S.W.3d 443, 446 (Tex.Crim.App.2011). The evidence can come from any source, and a defendant's testimony alone is sufficient to raise the issue. *Bell v. State,* 693 S.W.2d 434, 442 (Tex. Crim. App. 1985).

Accordingly, because the jury was altogether precluded by the trial court from even considering evidence of guilt as to these lesser-included offenses, the error occasion in this case caused sufficient harm and requires reversal. *Wilson v. State,* 391 S.W.3d 131, 138 (Tex. App.–Texarkana 2012, no pet.) (citing A b d n o r ,

871 S.W.2d at 731–32).

## Issue Number 9

The trial court erred in denying Appellant's request for inclusion in the punishment charge of a sudden passion instruction.

## Standard of Review—Jury Instruction Error

We review a trial court's decision whether to instruct the jury on a defensive issue, such as sudden passion, for an abuse of discretion. *See Love v. State, 199*S.W.3d 447, 455 (Tex.App.–Houston [1st Dist.] 2006, pet. ref'd) (*citing Wesbrook v.State,* 29 S.W.3d 103, 122 (Tex. Crim. App. 2000), *cert. denied,* 532 U.S. 944 (2001)). In reviewing a case involving a sudden-passion jury charge, it is our duty to focus on the evidence supporting that charge, not on the evidence refuting it. *Trevino,* 100 S.W.3d at 239.

During the punishment trial phase of the case, the court inquired whether either the State or defense had any objection to the proposed punishment jury instructions (RR 18/61) (CR 342). Both the State and defense counsel advised the trial court that they had no objection to the punishment charge (RR 18/61). Thereafter, defense counsel filed a motion to replace the current punishment charge (CR 390-91).

In the motion, defense counsel noted "at approximately 5:00 PM on Wednesday, 7 May 2014, the Court excused the jury and ordered same to return to Court on Tuesday, 13 May 2014 to be read the Punishment Charge, to hear

closing arguments, and to deliberate the Defendant's punishment in the case at hand" (CR 390). Defense counsel thereafter acknowledged that he made no objection to the trial court's proposed punishment instruction at that time. *Id.* On May 12, 2014, the day prior to the jury's return to court, defense counsel filed his motion requesting replacement of the jury punishment charge. *Id.*

Counsel argued in the motion that the punishment charge should include a section regarding "sudden passion". *Id.* and (RR Sup. 1/6-7). Counsel argued that according to Appellant's confession:

> [H]e felt he had no choice but to shoot Christopher Mass in order to save his own life from immediate imminent attack by Mr. Mass. Mr. Neal explained in his interview that the sudden approach of Mr. Mass and Mr. Neal's immediate fear and apprehension of imminent attack upon him by Mr. Mass, a stranger to Mr. Neal, was the reason he shot Mr. Mass.

(CR 390).

Defense counsel also stressed that:

> During the punishment stage of the trial, the Defendant put on seven witnesses, who, together, inferentially and/or directly painted a picture to the jury that Mr. Neal (1) is not a violent man; (2) is not prone to bursts of temper; (3) is a fluent and gifted communicator who can usually talk his way out of a pending or imminent bad or dire situation. It is therefore possible, under the evidence presented to the jury during the punishment phase of the trial, that Mr. Neal, normally a cool, calm, communicative individual, and while fearing imminent attack from Mr. Mass, acted out sudden passion when he shot and killed Christopher Mass.

*Id.*

The State objected to the inclusion of the sudden passion instruction (RR Supp. 1/8). The trial court denied Appellant's requested charge ruling that in order

for Appellant to have been entitled to the sudden passion instruction, the evidence had to establish more than "mere fear" (RR Supp. 1/11).

Texas law recognizes that sudden passion and self-defense are distinct inquiries for which a jury's verdict will not always overlap. *See Wooten v. State,* 400 S.W.3d 601, 608–09 (Tex. Crim. App. 2013). "If the defendant proves the issue in the affirmative by a preponderance of the evidence, the offense is a felony of the second degree." *Id.*; *see also Bell*, 693 S.W. 2d at 442 (noting that such evidence can come from any source, and a defendant's testimony alone is sufficient to raise the issue).

"Sudden passion" is defined for these purposes as "passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed which passion arises at the time of the offense and is not solely the result of former provocation. *Id.* § 19.02(a) (2). The "adequate cause" giving rise to sudden passion for these purposes is a cause "that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection." *Id.* § 19.02(a) (1). An accused is entitled to an instruction on every defensive issue raised by the evidence, regardless of whether that evidence is weak, contradicted, un-impeached, or unbelievable. *Trevino v. State,* 100 S.W.3d 232, 238 (Tex. Crim. App. 2003). The defendant has the burden of production and persuasion with respect to the issue

71

of sudden passion. TEX. PENAL CODE § 19.02(d).

To justify an instruction on the issue of sudden passion at the punishment phase, at a minimum the record must support inferences that:
(1) the defendant acted under the immediate influence of a passion such as terror, anger, rage, or resentment; (2) his sudden passion was in fact induced by some provocation by the deceased or another acting with him, which provocation would commonly produce such a passion in a person of ordinary temper; (3) he committed the murder before regaining his capacity for cool reflection; and (4) a causal connection existed "between the provocation, passion, and homicide." *Wooten,* 400 S.W.3d at 605. If the reviewing court agrees that a trial court erred by failing to submit a sudden passion instruction, then it must analyze whether the error harmed the appellant. *Id.* at 606.

In *Wooten,* CCA considered the question whether the defendant had been harmed by the omission of a requested sudden-passion special issue at the punishment phase. *Id.* at 608. In holding that he had not, the CCA observed that, given that the jury had rejected Wooten's claim that his use of deadly force was justified, it was, on the facts of that record, "highly unlikely" that the jury would have nevertheless found that he acted under the immediate influence of sudden passion. *Id.* at 609. The Court's holding in *Wooten* was based on the rationale that, by its verdict of guilty, the jury had indicated that it "simply did not believe"

Wooten's self-defense claim, which was premised on a factual assertion that the complainant had fired upon Wooten first. *Id.* The Court accordingly concluded that Wooten had not suffered "some harm" as a result of the omitted sudden passion special issue. *Id.* at 610.

The facts of this case, however, differ from those in *Wooten.* As noted supra in Issue 4, the trial court completely gutted Appellant's self-defense instruction. As a consequence, the jury in this case, unlike the jury in *Wooten,* was not afforded the opportunity to thoroughly deliberate and determine whether Appellant acted in self-defense. It therefore cannot be presumed that jury in this case would have rejected a sudden-passion special issue.

In *Trevino v. State,* 60 S.W.3d 188 (Tex. App.–Fort Worth 2001), *aff'd* 100 S.W.3d 232 (Tex. Crim. App. 2003), the Fort Worth court of appeals observed that "[w]hen the defendant raises issues of self-defense during the guilt/innocence phase of trial, the issue of sudden passion is typically also raised.... Accordingly, trial courts should give both instructions when requested." *Trevino,* 60 S.W.3d at 195 (quoting *Chavez v. State,* 6 S.W.3d 66, 72–73 (Tex. App.–San Antonio 1999, pet. ref'd)). Similar language can be found in other cases, albeit in the context of different types of legal challenges. *See, e.g., Chavez,* 6 S.W.3d at 72–73 (ineffective assistance of counsel for failure to request sudden-passion instruction); *Benavides v. State,* 992 S.W.2d 511, 524–25 (Tex. App.–Houston [1st Dist.] 1999, pet. ref'd) (legal

sufficiency of evidence to support murder conviction). *But see Grffen v. State*, 2014 WL 7474076 (Tex. App.—Houston (1st Dist.) 2014). (observing that "a bare claim of 'fear' " does not demonstrate "sudden passion arising from adequate cause").

As noted supra, Appellant's confession confirms that under the circumstances of his attack he was in fear for his life and had to adequate time to reflect upon the full consequence of his actions. In *McKinney v. State,* No. 12–03–00155–CR, 2004 WL 1852975, 2004 Tex. App. LEXIS 7472 (Tex. App.-Tyler August 18, 2004) this Court noted that for anger or fear to rise to the level of sudden passion, the appellant's mind must have been rendered incapable of cool reflection. In the case *sub judice*, Appellant did not simply act in response to Mass' provocation. He instead acted under the immediate influence of sudden passion arising from an adequate cause, the fact that two large individuals whom he'd just had a heated verbal exchange with had pursued him outside of the mal in order to fight with him. Accordingly, the facts in this case justified inclusion of a sudden passion instruction in the punishment charge and trial court erred in refusing to grant same.

## **Prayer**

Wherefore, premises considered, appellant prays that the Court reverse the judgment and remand the cause for new trial. Appellant further prays for all other relief to which he may be entitled.

Respectfully submitted,

/s/ Gerald J. Smith, Sr.
Gerald J. Smith, Sr.
State Bar No. 24039316
2000 E. Lamar Blvd., Suite 330
Arlington, Texas 76006
Tel. 817-635-3100
Fax 817-635-3400
attorney@gjsmithlaw.com
Attorney for the Appellant

## CERTIFICATE OF COMPLIANCE

This document complies with the typeface requirements of Tex. R. App. P. 9.4(e) because it has been prepared in a conventional typeface no smaller than 14-point for text and 12-point for footnotes. This document also complies with the word-count limitations of Tex. R. App. P. 9.4(i), if applicable, because it contains less than 15,000 words, excluding any parts exempted by Tex. R. App. P. 9.4(i)(1).

# CERTIFICATE OF SERVICE

I certify that a true and correct copy of Appellant's brief was delivered    via U.S. Mail to the following parties on 8 May 2015:

Michael West
Assistant District Attorney
Smith County District Attorney
100 N. Broadway Avenue, 4th Floor
Tyler, Texas  75702

Jim Ferguson Unit
Inmate: Rickey Neal, Jr.
TDCJ No. 01934438
12120 Savage Dr.
Midway, Texas  75852

_/s/ Gerald J. Smith, Sr._